**REED SMITH LLP**
*Formed in the State of Delaware*
Shannon McClure, Esq.
Julia A. Lopez, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Tel. (609) 987-0050
Fax (609) 951-0824

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Adam Abensohn, Esq.
(admitted *pro hac vice*)
David Burnett, Esq.
(admitted *pro hac vice*)
Stephen Schweizer, Esq.
(admitted *pro hac vice*)
Jesse Bernstein, Esq.
(admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel. (212) 849-7000
Fax (212) 849-7100

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Richard Schirtzer, Esq.
(admitted *pro hac vice*)
Molly Stephens, Esq.
(admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel. (213) 443-3000
Fax (213) 443-3100

*Attorneys for Defendants Allergan plc, Brenton L. Saunders,*
*Paul M. Bisaro, Maria Teresa Hilado, R. Todd Joyce, Sigurdur*
*O. Olafsson, David A. Buchen, James H. Bloem, Christopher*
*W. Bodine, Tamar D. Howson, John A. King, Ph.D., Catherine*
*M. Klema, Jiri Michal, Jack Michelson, Patrick J. O'Sullivan,*
*Ronald R. Taylor, Andrew L. Turner, Fred G. Weiss, Nesli*
*Basgoz, M.D., and Christopher J. Coughlin*

| | |
|---|---|
| IN RE ALLERGAN GENERIC DRUG PRICING SECURITIES LITIGATION | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br><br>Civil Action No. 2:16-cv-09449 (SDW) (LDW)<br><br>**REPLY MEMORANDUM OF LAW** |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..............................................................................................................1

I.      PLAINTIFFS' SECTION 10(B) CLAIMS SHOULD BE DISMISSED ...........................1

     A.     Plaintiffs' Suspicion Of Price-Fixing Is Not Sufficient ................................2

     B.     Plaintiffs Fail To Adequately Allege The Elements Of Their Claim .....................4

          1.     Plaintiffs' Allegations Do Not Support A Strong Inference Of Scienter .....................................................................................................4

               (a)     The Government Investigation Does Not Support Scienter ...........4

               (b)     Plaintiffs Are Not Entitled To A Core Operations Inference .........5

               (c)     Plaintiffs' Motive And Opportunity Allegations Are Insufficient ...................................................................................7

               (d)     Plaintiffs Cannot Allege Defendants Acted Against Self-Interest .......................................................................................8

          2.     Plaintiffs Have Not Alleged A Materially False Or Misleading Statement ...............................................................................................9

                (a)     The Statements Concerning Competition In The Overall Generics Markets Were Accurate And Not Misleading ...............10

               (b)     The Statements Concerning Revenue And Growth Were Accurate And Not Misleading .......................................................11

               (c)     Statements Concerning The Corporate Code Of Conduct Were Accurate and Not Misleading ...............................................13

          3.     Plaintiffs Have Not Alleged Loss Causation ...............................................14

II.     PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED..............................15

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) .................................................................... 7

*In re Bradley Pharm., Inc. Sec. Litig.*,
421 F. Supp. 2d 822 (D.N.J. 2006) ........................................................ 14

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .................................................................. 2

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) .................................................................. 15

*Carmack v. Amaya Inc.*,
16-cv-1884, 2017 WL 2610673 (D.N.J. June 15, 2017) ....................... 14

*Cenco Inc. v. Seidman & Seidman*,
686 F.2d 449 (7th Cir. 1982) ................................................................... 7

*Chamberlain Reddy Ice Holdings, Inc.*,
757 F. Supp. 2d 683 (E.D. Mich. 2010) .................................................. 3

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) .............................................................. 9, 10

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
442 F. App'x 672 (3d Cir. 2011) ..................................................... 3, 7, 9

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
686 F. Supp. 2d 404 (D. Del. 2009) ................................................. 6, 13

*Craftmatic Sec. Litig. v. Kraftsow*,
890 F.2d 628 (3d Cir. 1989) .................................................................. 13

*In re Eletrobras Sec.*
245 F. Supp. 3d 450 (S.D.N.Y. 2017) .............................................. 11, 13

*In re FBR Inc. Sec. Litig.*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008) ................................................... 12

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ..................................................... 5

*In re Infineon Techs. AG Sec. Litig.*,
No. 04-cv-04156, 2008 WL 11333700 (N.D. Cal. Jan. 25, 2008) .......... 6

*In re Infineon Techs. AG*,
C 04-04156 JW, 2006 WL 1329887 (N.D. Cal. May 16, 2006) .............. 3

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) .................................................................... 6

*Kaley v. United States,*
    134 S. Ct. 1090 (2014) .................................................................................. 5

*Lipow v. Net1 UEPS Techs., Inc.,*
    131 F. Supp. 3d 144 (S.D.N.Y. 2015) ......................................................... 5

*Loos v. Immersion Corp.,*
    762 F.3d 880 (9th Cir. 2014) ..................................................................... 14

*Makor Issues & Rights, Ltd. v. Tellabs Inc.,*
    513 F.3d 702 (7th Cir. 2008) ....................................................................... 6

*Martin v. GNC Holdings, Inc., 15-cv-01522,*
    2017 WL 3974002 (W.D. Pa. Sept. 8, 2017) ............................................. 14

*Menkes v. Stolt-Nielsen S.A., 3-cv-409,*
    2005 WL 3050970 (D. Conn. Nov. 10, 2005) ..................................... 10, 13

*In re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314 (3d Cir. 2002) ............................................................... 15, 16

*Oran v. Stafford,*
    226 F.3d 275 (3d Cir. 2000) ......................................................................... 8

*In re Petrobras Sec. Litig.,*
    116 F. Supp. 3d 368 (S.D.N.Y. 2015) ....................................................... 13

*In re Platinum & Palladium Antitrust Litig.,*
    2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ............................................. 9

*In re Propranolol Antitrust Litig.,*
    2017 WL 1287515 (S.D.N.Y. Apr. 6, 2017) ................................... 2, 7, 8, 9

*In re Providian Fin. Corp. Sec. Litig.,*
    152 F. Supp. 2d 814 (E.D. Pa. 2001) ......................................................... 12

*Rahman v. Kid Brands, Inc.,*
    736 F.3d 237 (3d Cr. 2016) .............................................................. 3, 5, 6, 7

*In re Schering-Plough Corp./Enhance Sec. Litig.,*
    2009 WL 2855457 (D.N.J. Sept. 2, 2009) ................................................... 2

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc., 12-cv-00993,*
    2016 WL 7117455 (M.D. Pa. Dec. 7, 2016) ............................................. 14

*In re Sipex Corp. Sec. Litig.,*
    05-cv-00392, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ................... 12

*In re Sotheby's Holdings, Inc.,*
    00-cv-1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .................... 3, 7

*In re Suprema Specialties, Inc. Sec. Litig.,*
    438 F.3d 256 (3d Cir. 2006) ................................................................. 5, 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ..................................................................................... 4

*In re VEON Ltd. Sec. Litig.,*
   15-cv-8672, 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ..................................................... 11

### RULES AND REGULATIONS

15 U.S.C. § 78u-4(b)(1)(B) ............................................................................................................ 2

15 U.S.C. § 78u-4(b)(1) ............................................................................................................. 15

15 U.S.C. § 78u-4(b)(2)(A) .......................................................................................................... 2

Fed. R. Civ. P. 8 ...................................................................................................................... 2, 7

Fed. R. Civ. P. 9 .......................................................................................................................... 2

### ADDITIONAL AUTHORITIES

DOJ ANTITRUST DIVISION MANUAL  (5th ed. 2015) ..................................................................... 5

## PRELIMINARY STATEMENT

The Opposition makes clear Plaintiffs are attempting to convert their unconfirmed suspicion of price fixing by certain employees in Allergan's former generics division into a full-blown claim against the company for securities fraud. Plaintiffs focus their argument on "investigations" and "lawsuits alleging *antitrust claims*," Opp. 1, but their obligation, under the PSLRA, is to plead particularized facts in support of a *securities fraud claim*.[1] Nothing in the Opposition masks the fact that the Complaint is missing all the components the Third Circuit has repeatedly deemed essential for pleading such a claim. Among other deficiencies:

- Plaintiffs assume an underlying price-fixing scheme, based on the issuance of a subpoena and guilty pleas by *personnel from other companies*, even though there has never been a finding, or even charges filed, against Allergan;

- Plaintiffs assume Defendants knew about the purported scheme and intended to mislead investors, even though Plaintiffs cannot identify a single piece of information available to Defendants not also available to investors generally;

- Plaintiffs claim Defendants made repeated "misrepresentations," even though Plaintiffs cannot point to a single statement by Defendants concerning any of the four drugs for which prices were supposedly manipulated; and,

- Plaintiffs claim investors were harmed, even though it is now undisputed Defendants sold their generics division at the exact price—$40.5 billion—announced prior to the "revelations" that supposedly devalued the company.

The Complaint simply does not describe securities fraud. It is a classic example of a strike suit, in which Plaintiffs assume wrongdoing, assume Defendants intended to mislead investors, and find "misrepresentations" where there are none. This action should be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' SECTION 10(B) CLAIMS SHOULD BE DISMISSED

Plaintiffs are attempting to turn an unproven, civil antitrust case—with no guilty plea, no finding of wrongdoing, and no governmental charges—into securities fraud. And they ask the

---

[1] "Opp." or the "Opposition" shall refer to Plaintiffs' Opposition Brief. Defined terms bear the meaning in Defendants' Opening Brief ("Br.") or the Opposition, and all emphasis is added.

Court to apply a "relax[ed] [pleading] standard," Opp. 12-13, so they can do so. But Plaintiffs' cases discuss the pleading standard under Rule 9(b); none purport to relax the heightened pleading requirements separately mandated by the PSLRA. *In re Schering-Plough Corp./Enhance Sec. Litig.*, 2009 WL 2855457, at *2 (D.N.J. Sept. 2, 2009) (discussing PSLRA and Rule 9(b) standards separately and upholding PSLRA); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 n.6 (3d Cir. 1997) ("The parties do not contend … the [PSLRA] … applies"). Plaintiffs must meet their statutory obligation to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1)(B), and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). Plaintiffs do not come close.

### A.     Plaintiffs' Suspicion Of Price-Fixing Is Not Sufficient

It is telling Plaintiffs rely most heavily on a ruling, outside this jurisdiction, that did not involve a claim of securities fraud. Plaintiffs cite, no fewer than 12 times, the decision in *In re Propranolol Antitrust Litig.*, where the court held the plaintiffs had stated a civil antitrust claim. 2017 WL 1287515 (S.D.N.Y. Apr. 6, 2017). That ruling is inapposite for numerous reasons: it was decided under the lenient pleading standards of Rule 8 (*id.* at *1); it expressly rejected Third Circuit precedent holding allegations of parallel price movement alone won't support conspiracy (*id.* at *5); and it did not address—because no such claim was before it—whether the plaintiffs' allegations supported an inference a defendant intended to mislead investors.

As Defendants showed, the relevant authority here is securities fraud precedent, including in the Third Circuit, demonstrating Plaintiffs' claims rest on multiple, impermissible assumptions. Br. 15-21. *First*, as discussed in Section I.B.1, a plaintiff claiming securities fraud based on a failure to disclose an underlying price-fixing conspiracy cannot simply assume such price-fixing took place. Courts require a guilty plea or a similar confirmation that the violation occurred. *See*,

*e.g.*, *Chamberlain Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 690 (E.D. Mich. 2010) (company disclosed management member "violated company policies in connection with antitrust violations investigated by the DOJ" (quoting the record)); *In re Infineon Techs. AG*, C 04-04156 JW, 2006 WL 1329887, at *2 (N.D. Cal. May 16, 2006) (guilty pleas); *In re Sotheby's Holdings, Inc.*, 00-cv-1041, 2000 WL 1234601, at *2 (S.D.N.Y. Aug. 31, 2000) (company entered DOJ leniency program).  Here, there is no such finding of guilt, or even allegation, by any court or government agency.  Instead, Plaintiffs assume a price-fixing conspiracy based on the issuance of a subpoena, and guilty pleas *by officers of a different company*.  *E.g.*, Opp. 30.

*Second*, Plaintiffs insist (Opp. 24) the purported existence of a price-fixing conspiracy is enough, "standing alone," to infer Defendants' intent to mislead investors.  That is wrong.  The Courts of this jurisdiction have repeatedly found, *even where an underlying price-fixing scheme was confirmed by a guilty plea*, that plaintiffs' scienter allegations were deficient.  *See*, *e.g.*, *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 677 (3d Cir. 2011) (affirming dismissal for lack of scienter despite fact that, unlike here, employees pled guilty to price-fixing that, unlike here, "affected a substantial portion of [defendant's] business").  As discussed in Section I.B.1(b), the law requires "additional allegations of *specific information conveyed to management and related to fraud*."  *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245-46 (3d Cr. 2016).  There are no such allegations here.

*Third*, precedent confirms a defendant's general statements about its financial results or market competition can only be rendered misleading by undisclosed wrongdoing impacting a large part of a defendant's business.  *Infineon*, 2006 WL 1329887, at *3, *6 (entire market for product, constituting 70% of company's earnings, subject to price-fixing scheme); *Sotheby's*, 2000 WL 1234601, at *4 & *4 n.2 (price-fixing impacted 95% of the market in sole line of business).  There

is nothing approaching that here:  The only alleged "misrepresentations" were Allergan's broad statements about its financial results and competition in the generics market generally, which were not rendered false by purported price-fixing involving four drugs whose *total revenues* (not revenues from purported price-fixing) accounted for far less than 5% of Allergan's overall revenues during the Class Period.  Br. 5, 17-18 & n.8.

In sum, the Complaint has none of the hallmarks of a viable securities fraud action. Plaintiffs cannot cure that deficiency by diverting attention to an out-of-jurisdiction decision addressing a different type of claim under a more lenient pleading standard.

### B.     Plaintiffs Fail To Adequately Allege The Elements Of Their Claim

#### 1.     *Plaintiffs' Allegations Do Not Support A Strong Inference Of Scienter*

In order to adequately plead scienter, Plaintiffs must set forth particularized allegations that Defendants intentionally or recklessly misled investors about the purported price-fixing underlying the claims in this action.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); 15 U.S.C. § 78u-4(b).  But Plaintiffs do not even adequately allege price fixing took place, much less that Defendants knew about it and intended to mislead investors.

##### (a)     The Government Investigation Does Not Support Scienter

Plaintiffs openly embrace the notion that subpoenas and investigations, as opposed to confirmed findings of guilt, permit them to *assume* certain Allergan personnel conspired to fix prices.  Plaintiffs rely repeatedly on the issuance of a subpoena (Opp. 2, 4, 8, 9, 23, 28, 29, 31, 32); on guilty pleas by personnel from other companies (*id.* at 1, 3, 10, 29, 30); and, remarkably, on Department of Justice press releases naming certain products and companies, but not Allergan or any of the four drugs at issue here (*id.* at 3, 9, 10, 13, 23, 29).  Plaintiffs cannot identify a single case in which a Government *investigation*, which has not resulted in charges, has salvaged deficient scienter allegations.  Multiple courts have held that an investigation is "not sufficient to

give rise to a requisite cogent and compelling inference of scienter[.]" *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013); *see id.* at 383 (dismissing complaint, despite government investigation, for failure to allege scienter).[2]

Plaintiffs' own cited authority demonstrates the deficiency in their allegations. Plaintiffs rely heavily on *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006), in which they say the Third Circuit upheld "similar allegations" of scienter as they allege here. Opp. 29. But in *Suprema*, "[g]overnment investigations resulted in four individuals connected to Suprema's schemes pleading guilty to federal charges of, *inter alia*, conspiracy to commit securities fraud," and "admitt[ing] in their plea allocutions that they had created false invoices, falsely labeled cheese, and adulterated cheese *at the direction and with the participation of Suprema's management*." *Id.* at 278. Here, there is no allegation that any Allergan personnel, or any personnel from any other company, has ever implicated Allergan in purported price-fixing.[3]

(b)     Plaintiffs Are Not Entitled To A Core Operations Inference

As Defendants explained, a "core operations" inference is unavailable here because the Complaint does not allege the purported price-fixing impacted a significant portion of Allergan's business. Br. 28 & n.12 (citing *Rahman*, 736 F.3d at 245-46). Plaintiffs respond with a strained

---

[2]   Plaintiffs' sole authority for the proposition that Allergan's receipt of a "criminal grand jury subpoena" is, "alone," "enough" to infer conspiracy (Opp. 23), shows just the opposite. The DOJ ANTITRUST DIVISION MANUAL states expressly subpoenas are issued to investigate "*if*" criminal conduct occurred, not to signal criminal activity in fact did occur.  (5th ed. 2015) III-82, § F-1. Plaintiffs' contention that a Government *subpoena*—not even an indictment—raises an inference of guilt is contrary to "the most fundamental precepts underlying the American criminal justice system." *Kaley v. United States*, 134 S. Ct. 1090, 1114 (2014).

[3]   Plaintiffs' other authorities (Opp. 29) for the proposition that Government investigations "may be considered" just confirm an investigation alone won't support scienter. *See, e.g.*, *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) (dismissing claim for failure to allege scienter, noting "government investigations cannot bolster allegations of scienter that do not exist, and, as currently plead, the government investigations are just that, investigations").

analogy (Opp. 25-26) to *Institutional Inv'rs Grp. v. Avaya, Inc.* 564 F.3d 242 (3d Cir. 2009). Unlike here, the plaintiffs in *Avaya* alleged specific facts indicating the defendant was engaged in pervasive, undisclosed discounting across its *entire* key business. *Id.* at 269-270. Plaintiffs' other cited cases similarly involved situations where the wrongdoing impacted *entire* business units or the *primary* source of the company's revenue.[4]  "No such circumstances are present here." *Rahman*, 736 F.3d at 246.

The core operations inference also does not apply because the allegations of "corporate management's general awareness of the day-to-day workings of the company" were not supplemented with "additional allegations of *specific information conveyed to management and related to fraud*." *Id.* at 247 (quotation and citation omitted). Plaintiffs do not identify any non-public information conveyed to management that would have alerted them to the supposed price-fixing. Plaintiffs rely instead on the same "public scrutiny" (Opp. 27) that was fully known to investors and did not uncover any wrongdoing. This gap in Plaintiffs' allegations places this case on all fours with precedent rejecting inadequately pled securities fraud claims. *Id.* at 246 ("*Avaya* has limited precedential value" where no specific information conveyed); *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 424 (D. Del. 2009) (distinguishing *Avaya* on basis price-fixing, unlike fraud in *Avaya*, is difficult to detect).

Plaintiffs cannot salvage their "core operations" theory by arguing the alleged price-fixing "could not be done without the knowledge and approval of the Company's senior executives."

---

[4]  *E.g.*, *In re Infineon Techs. AG Sec. Litig.*, No. 04-cv-04156, 2008 WL 11333700, at *8 (N.D. Cal. Jan. 25, 2008) (finding scienter of company's president and CEO relating to competitiveness of company's largest product by revenue based on allegations of specific meeting and correspondence to fix price of product and guilty pleas by executives confirming conspiracy); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709-12 (7th Cir. 2008) (upholding scienter allegation that CEO stated company's "'flagship' product," and its replacement—which "were to Tellabs as Windows XP and Vista are to Microsoft"—was "available," when specific allegations showed it was well-known internally product was months from shipping).

Opp. 27.  "[M]any a corporation has paid heavy damages for antitrust violations committed by low-level … managers," (*Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 456 (7th Cir. 1982)), and courts have repeatedly held management's scienter cannot be inferred from even pervasive price-fixing.  *E.g.*, *Horizon III*, 442 F. App'x at 677 (affirming dismissal for lack of scienter despite allegations of pervasive price-fixing across the defendant's key business); *Sotheby's*, 2000 WL 1234601, at *7 (dismissing claim against Officer Defendants, despite allegations of pervasive fraud affecting the defendant's core business, because no allegation they "possessed any specific knowledge of the alleged illegal conduct"); *cf. In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company").  These precedents apply with even greater force here, where the supposed fixing related to just four of Allergan's 250 generics.  McClure Decl. Ex. 1.

(c)   <u>Plaintiffs' Motive And Opportunity Allegations Are Insufficient</u>

Plaintiffs concede they cannot adequately plead scienter by alleging Defendants had a motive "generally possessed by most corporate directors and officers."  Br. 28.  Plaintiffs nonetheless insist Defendants had an "industry-specific motive" because the prices for generic drugs had "bottomed out," (Opp. 30).  But Plaintiffs' sole authority is *Propranolol*, where the Court was not addressing allegations that defendants possessed the scienter to mislead investors under the particularized pleading standards of the PSLRA, but was addressing whether plaintiffs had adequately alleged an intent to engage in price-fixing under the far looser requirements of Rule 8.  In the Third Circuit, in a securities fraud action, an alleged "generalized profit motive" is not sufficient to support a claim.  *Rahman*, 736 F.3d at 245-46; Br. 27-28.

Plaintiffs also have no answer to Defendants' showing that the alleged stock sales were not unusual in time or scope, and thus cannot be used to establish scienter, because (i) all of the sales occurred **before** the vast majority of the alleged wrongdoing; and (ii) all Defendants held onto

7

more than 60% of their shares, and Allergan's CEO and CFO sold *zero* shares.  *Id.*  Plaintiffs' only response to the latter point is to speculate that, because CEO Saunders and CFO Hilado began at Actavis shortly before the alleged Congressional investigation, it is "reasonable to assume that the commencement of the Congressional investigation into price-fixing preempted any stock sales after October 2, 2014."  Opp. 31.  That admitted "assum[ption]" directly conflicts with Plaintiffs' own theory that price-fixing for Propranolol *began* after October 2, 2014, and price-fixing for Ursodiol continued after October 2, 2014.  ¶¶ 124, 125, 167, 169.  Nor do Plaintiffs attempt to show, as they must, that the sales by the Defendants who did sell were unusual in scope relative to prior sales or their overall holdings.  *See*, *e.g.*, *Oran v. Stafford*, 226 F.3d 275, 290 (3d Cir. 2000) (sales not unusual in scope where they are similar in scope to pre-class period sales).[5]

(d)    Plaintiffs Cannot Allege Defendants Acted Against Self-Interest

Defendants also argue the "astronomical price increases" alleged in the Complaint were, "absent a price-fixing agreement, clearly against the co-conspirators' self interest."  Opp. 28.  But that argument addresses the supposed intent to engage in price fixing, and says nothing about any supposed intent to commit securities fraud, which are two different matters—as confirmed by multiple decisions dismissing securities fraud claims even where price fixing was confirmed. Section I.B.1(a), *supra*.  Plaintiffs' sole authority is, again, *Propranolol*, an antitrust case in which the court never considered whether the allegations before it supported an inference of scienter.  *Id*.

Even if the issue here were whether Plaintiffs had adequately pled an intent to engage in price fixing (it is not), their allegations would still fall short.  Third Circuit authority makes clear Plaintiffs have not alleged scienter if there is a nonculpable explanation for price movements.

---

[5] Plaintiffs do not attempt to make that showing because they cannot.  For example, Buchen sold approximately $3.4 million more, in the three years prior to the Class Period, as he is alleged to have sold during the three-year Class Period, and Bisaro sold at least $200,000 more.  *See* McClure Reply Cert. Exs. 1-22 (collecting pre-Class Period sales).

*Horizon III*, 442 F. App'x at 675.  Here, Plaintiffs do not address the nonculpable explanation that Allergan increased prices of older drugs to see what the market would bear, in lieu of discontinuing them.  Br. 16.  Plaintiffs also do not address (except by summarily dismissing) Defendants' showing the price movements alleged were not consistent with price-fixing, because members of the purported conspiracy regularly and drastically undercut one another's prices.  Br. 22-23 (citing ¶¶ 107-08 (Mylan and Impax Propranolol price differed by *434%*); ¶¶ 123-24 (Actavis and Epic Ursodiol price differed by *416%*); ¶¶ 140-41 (similar, Doxycycline); ¶¶ 156-57 (similar, Desonide).[6]  It is simply not a "highly factual question" (Opp. 22) as to why competitors were charging the same prices when, on the undisputed facts, that is not what they were doing.

2.    *Plaintiffs Have Not Alleged A Materially False Or Misleading Statement*

The Opposition confirms Defendants' showing (Br. 14-19) that Plaintiffs cannot identify a single representation, much less misrepresentation, concerning any of the four at-issue drugs.  Plaintiffs are therefore left to rely on the kind of general statements courts routinely reject as inadequate to support a claim.  *E.g.*, *Galati*, 220 F. App'x at 102 (rejecting assertion that kick-back scheme rendered general statements about growth and earnings misleading); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 175 (3d Cir. 2014) (statement that defendant proceeded to Phase 3 trial based on factors "including … data from an ongoing Phase 2 study" did not mislead as to negative Phase 2 results, because "the challenged statements in this case do not characterize or make affirmative claims about the Phase 2 interim results").

---

[6]  Plaintiffs claim that "whether certain price increases constitute parallel movement is a highly factual question."  Opp. 22.  But their cited case involved prices that moved in "lockstep" and in "near-perfect to perfect correlation;" thus, the factual question before that court was the reason for those parallel movements, not whether they were parallel.  *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *32 (S.D.N.Y. Mar. 28, 2017).  Here, there is no "plausible inference" of price fixing, *id.*, since the price movements, in which competitors indisputably undercut each other's prices by substantial amounts, are inconsistent with price-fixing.

(a)   The Statements Concerning Competition In The Overall Generics
Markets Were Accurate And Not Misleading

Plaintiffs claim Defendants had an obligation to disclose purported price-fixing on four drugs so their statements about competition in the generics business would not be misleading.  But it is undisputed Allergan's generics business was comprised of approximately 250 drugs in the U.S. and approximately 550 drugs worldwide.  McClure Decl. Ex. 1.  Courts have repeatedly rejected efforts by Plaintiffs to convert alleged wrongdoing confined to a segment of a defendant's business into a securities fraud claim.  *Galati*, 220 F. App'x at 102 (general statements regarding business unit did not "put in play," and thus require disclosure of, kickback scheme by management); *City of Edinburgh*, 754 F.3d at 175 (similar).  Under that precedent, Allergan's general statements it competed in the generics market did not "put in play" the four drugs at issue.

Plaintiffs are simply wrong that "courts routinely find similar statements concerning competition to be actionable where the issuer was engaged in anticompetitive conduct."  Opp. 15. Plaintiffs' cited cases (*id.* at 14-15) confirm a statement must have a "direct connection to" a material omitted fact to be rendered false or misleading by the omission.  *Menkes v. Stolt-Nielsen S.A.*, 3-cv-409, 2005 WL 3050970, at *8 (D. Conn. Nov. 10, 2005).  In contrast, a "generic description of the state of the market as a whole" will be "too remote … to compel disclosure[.]" *Id.* (rejecting claims based on statements remote from alleged fraud).  Here, the alleged price-fixing only touches on a negligible portion of the company's generics business (and the generics pharmaceutical industry as a whole), and therefore cannot render general statements regarding the generics pharmaceutical industry misleading.  Br. 17, 18 & n.18.

Plaintiffs seek to avoid this conclusion on the basis that three of the four at-issue drugs were at one point included on a list of 25 "key products."  Opp. 14-15.  But Plaintiffs put far more weight on that designation than the facts permit.  In the same disclosure, Allergan identified more

than twenty other "key products," and in total, Allergan sells 250 U.S. generic products and approximately 550 global generic products.   McClure Decl. Ex. 1 at 2-3.   Further, Plaintiffs concede Allergan's **total** revenues from the four at-issue drugs—including pre-class period sales dating back to as early as 2010—was far less than 5% of Allergan's total revenues during the Class Period.   Br. 17, 18 & n.18.   This immaterial amount is far less than any court has deemed sufficient to render general market statements false or misleading.

(b)   The Statements Concerning Revenue And Growth Were Accurate And Not Misleading

Defendants established in their Opening Brief that Allergan's revenue reports and representations about financial performance were not misleading because the Complaint includes no allegations those statements were false, nor that the alleged price-fixing materially impacted Allergan's revenues.   Br. 14-18.   The Opposition fails to refute that showing.

*First*, Plaintiffs do not claim Allergan reported revenue it did not actually generate, but argue instead that reported revenues were "inflated" because they included unspecified amounts supposedly generated by price-fixing.   Opp. 15-16.   This theory fails because a financial report that accurately discloses total revenues—even where a portion of those revenues allegedly came from an improper source—cannot support a securities fraud claim.   *Galati*, 220 F. App'x at 102 (dismissing action alleging reported financial figures were misleading due to inclusion of illegal revenue, holding "[f]actual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b)"); *see also In re VEON Ltd. Sec. Litig.*, 15-cv-8672, 2017 WL 4162342, at *6 (S.D.N.Y. Sept. 19, 2017) ("[A]ccurately reported income derived from illegal sources is non-actionable despite a failure to disclose the illegality.").[7]

---

[7]   Plaintiffs rely on out-of-Circuit authorities where, unlike here, the plaintiffs alleged specific GAAP violations resulting in inaccurate revenue reports.   *In re Eletrobras Sec.* 245 F. Supp. 3d

*Second*, Allergan's general statements regarding its "strong global growth" and "strong results" (Opp. 18) are the sort of "puffery" courts reject as grounds for a securities fraud claim. *Galati*, 220 F. App'x at 102 (general statements regarding earnings and strong growth were not rendered misleading by failure to disclose kick-back scheme). Further, Plaintiffs simply assume, *without identifying any supporting facts or allegations*, the supposed price-fixing on the four at issue drugs "dr[ove] the revenue and market share of Allergan's generics business." Opp. 16. The Complaint does not allege Defendants profited at all from the purported price-fixing, much less to a material extent—in fact, it is undisputed revenues from the four relevant drugs were less than 5% of total revenues, with no indication in the Complaint as to what portion of those immaterial amounts, if any, supposedly resulted from the alleged scheme. Br. 17-18 (citing ¶¶ 104, 107, 110, 137, 140, 143, 156, 204). This leaves no basis for Plaintiffs' assumption that Allergan was incorrect when it attributed its growth and earnings to, among other things, the sale of drugs not at issue in this case, and "product opportunities from our industry leading R&D pipeline[.]" ¶ 179.

Plaintiffs' authorities do not support their theory that general statements about revenue can be rendered misleading by a failure to disclose purported wrongdoing, but stand instead for the proposition that a defendants' attribution of revenue or growth to a ***specific*** source other than the ***actual*** (and sometimes illegal) source can be misleading. *E.g.*, *In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 823 (E.D. Pa. 2001). Where, as here, "there is no allegation in the Complaint that [Allergan's] involvement with a[] [price-fixing] scheme in connection with [the at-issue drugs] *was the source of the financial success* referred to in [Allergan's] statements," statements regarding the source of revenue are not misleading. *In re FBR Inc. Sec. Litig.*, 544 F.

---

450, 465 (S.D.N.Y. 2017) (bribes improperly not accounted for as expenses); *In re Sipex Corp. Sec. Litig.*, 05-cv-00392, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) (GAAP violations; revenues included "sham transaction" where money not actually earned).

Supp. 2d 346, 357–59 (S.D.N.Y. 2008) (distinguishing *Providian* and dismissing action where no allegation that defendants' illegal revenue was the true source of its financial success).

Finally, Plaintiffs' argument that illicit activity is inherently material, regardless of whether it affected revenue, misses the point.  The Third Circuit has not adopted such rule:  it specifically requires a showing the activity is material, *i.e.*, "substantially likely to be significant to a reasonable investor."  *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 640 n.16 (3d Cir. 1989).  Also, the question of whether misconduct is, in a vacuum, material is irrelevant to whether that conduct rendered a specific representation misleading, as a securities fraud claim requires.  *Menkes*, 2005 WL 3050970, at *7 ("[T]he obligation to disclose uncharged illegal conduct does not arise from the materiality of this information alone").  Plaintiffs' failure to meet that requirement is part and parcel of their improper effort to re-cast purported price-fixing as securities fraud.

(c)     Statements Concerning The Corporate Code Of Conduct Were Accurate and Not Misleading

Defendants showed in their moving papers that Plaintiffs cannot predicate liability on Allergan's statements that it had adopted a Code of Conduct, because those statements were indisputably true.  Br. 19 (citing *Horizon I*, 686 F. Supp. 2d at 415).  In response, Plaintiffs cite inapposite out-of-Circuit cases (Opp. 20) involving statements of ethics that, unlike here, were made in direct and immediate response to public concerns of misconduct, specifically in order to quash those concerns.  *See*, *e.g.*, *Eletrobras*, 245 F. Supp. 3d at 450 (basing liability on company's "repeated references" to "its adherence to its Code of Ethics" "made specifically in response to damaging media reports about bribery and bid-rigging"); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (recognizing statements regarding ethics "may be mere puffery," but finding they were actionable when "made repeatedly in an effort to reassure the investing public about the Company's integrity").  There is no allegation Allergan invoked its Code of Conduct in

13

response to questions regarding alleged price-fixing, and its mere statement that it had such a code, as in other cases, was not misleading. *See* Br. 19; *see also Carmack v. Amaya Inc.*, 16-cv-1884, 2017 WL 2610673, at *9 (D.N.J. June 15, 2017) (holding similar Code of Conduct statements inactionable).

3.   *Plaintiffs Have Not Alleged Loss Causation*

A disclosure that merely raises the possibility of fraud will not support loss causation unless the fraud is *confirmed*. Br. 30-31 (citing *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014), *as amended* (Sept. 11, 2014).[8] Plaintiffs' authorities impose the same requirement. *See, e.g.*, *In re Bradley Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 829 (D.N.J. 2006) (disclosure of SEC subpoena "began to reveal to the market place what the April 27 Press Release *later confirmed*."). Plaintiffs' reliance (Opp. 31-32) on an announcement in November 2016 the DOJ may bring charges that year against unspecified companies therefore negates their loss causation theory: no charges were brought against Allergan within that time frame, nor to the present day.

Further, Plaintiffs concede that Allergan had announced the sale of the Actavis unit (for $40.5 billion) by the time the DOJ subpoena was announced, and subsequently sold the unit for that exact price. Br. 31. This demonstrates the "revelation" of the subpoena, contrary to Plaintiffs' claims, did not devalue the company or harm investors. Likewise, Plaintiffs cannot rely (Opp. 31) on the later Bloomberg article as a loss causation event because, by the time it was published, Allergan and its investors had already realized the benefits of the Actavis sale. Br. 31.[9]

---

[8]   Plaintiffs claim Defendants did not support this argument with in-Circuit authority (Opp. 32); Plaintiffs are wrong. Br. 31 (citing *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 12-cv-00993, 2016 WL 7117455 (M.D. Pa. Dec. 7, 2016); *accord Martin v. GNC Holdings, Inc.*, 15-cv-01522, 2017 WL 3974002, at *18 (W.D. Pa. Sept. 8, 2017) (holding state AG's complaint merely contained "allegations of unproven misconduct" and "thus … is not a corrective disclosure which revealed … fraudulent conduct to the market.").

[9]   Because the Section 10(b) claims fail, the derivative Section 20(a) claims fail as well. Br. 32.

## II.     PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED

Defendants demonstrated in their Opening Brief (Br. 32-33) that Plaintiffs' claims under Section 14(a) were deficient because the Complaint fails to "specify each statement [in Defendants' proxy statements] alleged to have been misleading," as the Third Circuit requires. *E.g.*, *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002).  Plaintiffs respond that the Complaint identifies the financial statements and "alleges that the Proxies incorporated by reference the 2013 Form 10-K, and the 1Q, 2Q, and 3Q 2014 Forms 10Q."  Opp. 34.  But as demonstrated above, Section I.B.2(b), *supra*, there is no allegation the financial figures were inaccurate.  And Plaintiffs' reference to a passage in the proxy statements incorporating a raft of other documents "by reference" cannot possibly satisfy Plaintiffs' burden to "specify" the misrepresentations supporting their claim.  *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)(1)).[10]

Lastly, Plaintiffs argue against themselves when they insist the statute of limitations has not run on their Section 14(a) claims despite the disclosure of the DOJ subpoena more than a year before the initial complaint was filed.  Plaintiffs' Section 10(b) claims depend on the notion that the disclosure of the subpoena "strongly suggest[ed]" that Actavis was engaged in price-fixing. ¶¶ 16, 170, 234.  That is incorrect (Section I.B.1(a) *supra*), and all of Plaintiffs' claims therefore fail.  But if that assertion were correct, then investors by definition had sufficient "storm warnings" to start the Section 14(a) limitations period, and the Section 14 claim is untimely.  *NAHC*, 306 F.3d

---

[10]  Plaintiffs contend their Section 14(a) claims are "expressly pled in negligence" (Opp. 34), but that doctrine applies only when "the plaintiff has exercised care in differentiating asserted negligence claims from fraud claims and in delineating the allegations that support the negligence cause of action as distinct from the fraud," *Suprema*, 438 F.3d at 273.  Plaintiffs admit their Section 14(a) claims consist of a blanket incorporation of their Section 10(b) fraud claims.  Opp. 34.

at 1325.[11]  Plaintiffs cannot claim notice of the subpoena strongly indicated price fixing, while at the same time denying the same notice triggered the limitations period on their claim.

## <u>CONCLUSION</u>

For the reasons set forth above and in Defendants' opening submission, Plaintiffs' Amended Complaint should be dismissed in its entirety.

---

[11]  Plaintiffs concede they did not purchase preferred shares, but argue they have standing to pursue claims on behalf of preferred shareholders because the interests of both classes are the same.  Opp. 35.  This conflates Article III standing with class standing.  As Defendants showed, Plaintiffs do not have Article III standing, and any conflict with other class members is irrelevant.  Br. 35.

Dated:  October 6, 2017

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Richard Schirtzer, Esq. (*pro hac vice*)
Molly Stephens, Esq. (*pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Adam Abensohn, Esq. (*pro hac vice*)
David Burnett, Esq. (*pro hac vice*)
Stephen Schweizer, Esq. (*pro hac vice*)
Jesse Bernstein, Esq. (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendants Allergan plc,
Brenton L. Saunders, Paul M. Bisaro, Maria
Teresa Hilado, R. Todd Joyce, Sigurdur O.
Olafsson, David A. Buchen, James H. Bloem,
Christopher W. Bodine, Tamar D. Howson,
John A. King, Ph.D., Catherine M. Klema, Jiri
Michal, Jack Michelson, Patrick J. O'Sullivan,
Ronald R. Taylor, Andrew L. Turner, Fred G.
Weiss, Nesli Basgoz, M.D., and Christopher J.
Coughlin*

Respectfully submitted,

**REED SMITH LLP**

*s/ Shannon McClure*
Shannon McClure, Esq.
Julia A. Lopez, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
smcclure@reedsmith.com
jalopez@reedsmith.com