Shannon McClure, Esq.
Julia A. Lopez, Esq.
**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824

Richard Schirtzer, Esq.
(admitted *pro hac vice*)
Molly Stephens, Esq.
(admitted *pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Adam Abensohn, Esq.
(admitted *pro hac vice*)
Jesse Bernstein, Esq.
(admitted *pro hac vice*)
Leigha Empson
(*pro hac vice* application pending)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendants Allergan plc, Brenton L. Saunders,
Paul M. Bisaro, Maria Teresa Hilado, R. Todd Joyce, Sigurdur
O. Olafsson, David A. Buchen, James H. Bloem, Christopher
W. Bodine, Tamar D. Howson, John A. King, Ph.D., Catherine
M. Klema, Jiri Michal, Jack Michelson, Patrick J. O'Sullivan,
Ronald R. Taylor, Andrew L. Turner, Fred G. Weiss, Nesli
Basgoz, M.D., and Christopher J. Coughlin*

| | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY** |
|---|---|
| IN RE ALLERGAN GENERIC DRUG PRICING SECURITIES LITIGATION | Civil Action No. 2:16-cv-09449 (KSH) (CLW) |
| | **REPLY MEMORANDUM OF LAW** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     PLAINTIFFS' SECTION 10(B) CLAIMS SHOULD BE DISMISSED ...........................2

     A.    Courts Have Repeatedly Rejected Securities Fraud Claims Resting On The Same Assumptions Plaintiffs Rely On Here ..........................................................2

     B.    The Complaint Fails To Allege The Elements Of Securities Fraud .......................5

          1.    Plaintiffs Fail To Adequately Allege Underlying Price-Fixing .................5

          2.    Plaintiffs' Allegations Do Not Support A Strong Inference Of Scienter ........................................................................................................8

               (a)    The Government Investigation Does Not Support Scienter ...........9

               (b)    Plaintiffs Are Not Entitled To A Core Operations Inference .........9

               (c)    Plaintiffs' Motive And Opportunity Allegations Are Insufficient ....................................................................................11

               (d)    Plaintiffs Cannot Allege Defendants Acted Against Self-Interest ....................................................................................12

          3.    Plaintiffs Have Not Alleged A Materially False Or Misleading Statement ...................................................................................................12

               (a)    The Statements Concerning Competition In The Overall Generics Markets Were Accurate And Not Misleading ...............12

               (b)    Saunders' Statements Regarding the DOJ Subpoena Were Accurate and Not Misleading ........................................................14

               (c)    The Statements Concerning Revenue And Growth Were Accurate And Not Misleading ........................................................14

               (d)    Statements Concerning The Corporate Code Of Conduct Were Accurate and Not Misleading ................................................16

          4.    Plaintiffs Have Not Alleged Loss Causation ............................................17

II.    PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED..............................17

CONCLUSION.......................................................................................................................18

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) .......................................................................... 9, 11

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010) ................................................................................ 5

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999) ................................................................................ 8

*In re Bradley Pharm., Inc. Sec. Litig.*,
421 F. Supp. 2d 822 (D.N.J. 2006) ................................................................... 17

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .............................................................................. 2

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) .............................................................................. 18

*Cenco Inc. v. Seidman & Seidman*,
686 F.2d 449 (7th Cir. 1982) ............................................................................ 11

*Chamberlain v. Reddy Ice Holdings, Inc.*,
757 F. Supp. 2d 683 (E.D. Mich. 2010) .......................................................... 3, 13

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ......................................................................... 13, 14

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, ("*Horizon III*")
442 F. App'x 672 (3d Cir. 2011) ............................................................. 3, 9, 11

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, ("*Horizon I*")
686 F. Supp. 2d 404 (D. Del. 2009) ............................................................ 10, 16

*In re Electrobras Sec.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017) ........................................................... 15, 16

*In re FBR Inc. Sec. Litig.*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008) ............................................................... 16

*Galati v. Commerce Bancorp, Inc.*,
220 F. App'x 97. 102 (3d Cir. 2007) ............................................................ 13, 15

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) .................................................................. 9

*Gordon Gamm, et al. v. Sanderson Farms, Inc.*,
2018 WL 1319157 (S.D.N.Y. Jan. 19, 2018) ....................................................... 5

*Hull v. Glob. Digital Sols., Inc.*,
2017 WL 6493148 (D.N.J. Dec. 19, 2017) ......................................................... 17

*In re Infineon Techs. AG Sec. Litig.*,
2008 WL 11333700 (N.D. Cal. Jan. 25, 2008) ....................................................... 10

*In re Infineon Techs. AG*,
2006 WL 1329887 (N.D. Cal. May 16, 2006) ................................................... 3, 13

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) .............................................................................. 9, 10

*Kaley v. United States*,
134 S. Ct. 1090 (2014) ............................................................................................ 7

*Lipow v. Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015) ..................................................................... 9

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ................................................................................. 17

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ................................................................................. 10

*Menkes v. Stolt-Nielsen S.A.*,
2005 WL 3050970 (D. Conn. Nov. 10, 2005) .................................................. 13, 16

*In re Micron Techs., Inc. Sec. Litig.*,
2007 WL 576468 (D. Idaho Feb. 21, 2007) ........................................................... 13

*In re Mylan N.V. Sec. Litig.*,
2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ............................................ 4, 5, 9, 10, 17

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) .......................................................................... 18, 19

*Ontario Teachers' Pension Plan Board v. Teva*,
17-cv-00558 (D. Conn.) (Hearing on Motion to Dismiss) (ECF 218) ................... 1, 4, 6, 8, 12

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015) .................................................................... 17

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc.*,
998 F.2d 1224 (3d Cir. 1993) .................................................................................. 8

*In re Platinum & Palladium Antitrust Litig.*,
2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ......................................................... 8

*In re Propranolol Antitrust Litig.*,
2017 WL 1287515 (S.D.N.Y. Apr. 6, 2017) ....................................................... 4, 8

*In re Providian Fin. Corp. Sec. Litig.*,
152 F. Supp. 2d 814 (E.D. Pa. 2001) ..................................................................... 16

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cr. 2013) ........................................................................ 3, 9, 10, 11

*RSM Production Corp. v. Fridman*,
643 F.Supp.2d 382 (S.D.N.Y. 2009) ....................................................................... 6

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016) ............................................................... 15

*In re Schering-Plough Corp./Enhance Sec. Litig.*,
   2009 WL 2855457 (D.N.J. Sept. 2, 2009) ............................................................ 2

*In re Sipex Corp. Sec. Litig.*,
   2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ................................................... 15

*In re Sotheby's Holdings, Inc.*,
   2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ......................................... 3, 11, 13

*Superior Offshore Int'l Inc. v. Bristow Group, Inc.*,
   738 F. Supp. 2d 505 (D. Del. 2000), *aff'd 490 F. App'x 492 (3d Cir. 2012)* ........... 7

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ....................................................................... 7, 18

*Tunis Bros. Co., Inc. v. Ford Motor Co.*,
   952 F.2d 715 (3d Cir. 1991) ........................................................................... 6

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
   873 F.3d 185 (3d Cir. 2017) ...................................................................... 8, 12

*In re VEON Ltd. Sec. Litig.*,
   2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) .................................................. 15

## Rules and Regulations

15 U.S.C. § 78u-4(b) ........................................................................... 2, 5, 8, 18

## ADDITIONAL AUTHORITIES

DOJ ANTITRUST DIVISION MANUAL  (5th ed. 2015) ......................................... 7

## PRELIMINARY STATEMENT

The Opposition makes clear Plaintiffs are attempting to convert their unconfirmed suspicion of price-fixing by certain employees in Allergan's former generics division into a full-blown claim against the company for securities fraud.  Plaintiffs focus their argument on "investigations" and "lawsuits alleging *antitrust claims*," Opp. 1, but their obligation, under the PSLRA, is to plead particularized facts in support of a *securities fraud claim*.[1]  Nothing in the Opposition masks the fact that the Complaint is missing all the components courts have repeatedly deemed essential for pleading such a claim.

Among other deficiencies:

- Plaintiffs assume an underlying price-fixing scheme involving six generic drugs based on unadjudicated allegations in other pending actions:  As one Court recently described it, in dismissing a nearly identical action, Plaintiffs are improperly relying on "an allegation of an allegation."  Ex. 1 to Certification of Shannon McClure ("McClure Reply Cert.") at 19:4-5 (Transcript of April 3, 2018 Hearing on Motion to Dismiss in *Ontario Teachers' Pension Plan Board v. Teva*, 17-cv-00558 (D. Conn.) (ECF 218));

- Plaintiffs assume Defendants knew about the purported scheme and intended to mislead investors, even though there is no allegation that any Defendant was involved in pricing generic drugs, or had access to information not available to investors generally;

- Plaintiffs claim Defendants made repeated "misrepresentations," even though Plaintiffs cannot point to a single statement by Defendants concerning any of the six drugs for which prices were supposedly manipulated; and,

- Plaintiffs claim investors were harmed, even though it is now undisputed Defendants sold their generics division at the exact price—$40.5 billion—announced prior to the "revelations" that supposedly devalued the company.

The Complaint simply does not describe securities fraud.  It is a classic example of a strike suit, in which Plaintiffs assume wrongdoing, assume Defendants intended to mislead investors, and find "misrepresentations" where there are none.  This action should be dismissed.

---

[1]  "Opp." or the "Opposition" shall refer to Plaintiffs' Opposition Brief.  Citations to ¶¶ shall refer to the Second Amended Complaint.  Defined terms bear the meaning in Defendants' Opening Brief ("Br.") or the Opposition, and all emphasis is added.

## ARGUMENT

## I.   PLAINTIFFS' SECTION 10(B) CLAIMS SHOULD BE DISMISSED

Plaintiffs are attempting to turn an unproven, civil antitrust case—with no guilty plea and no finding of wrongdoing—into securities fraud.  And they ask the Court to apply a "relax[ed] [pleading] standard," Opp. 14, so they can do so.  To justify this request, Plaintiffs misleadingly cite cases discussing the Rule 9(b) pleading standard, none of which purport to relax the heightened pleading requirements separately mandated by the PSLRA.  *In re Schering-Plough Corp./Enhance Sec. Litig.*, 2009 WL 2855457, at *2 (D.N.J. Sept. 2, 2009) (discussing Rule 9(b) standards and holding "[i]n addition . . . securities fraud claims must also satisfy the heightened pleading requirements of the [PSLRA]"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 n.6 (3d Cir. 1997) ("The parties do not contend . . . the [PSLRA] . . . applies.").  Plaintiffs cannot escape their statutory obligation to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1)(B), and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[2]  *Id.*  § 78u-4(b)(2)(A).  Plaintiffs do not come close.

### A.   Courts Have Repeatedly Rejected Securities Fraud Claims Resting On The Same Assumptions Plaintiffs Rely On Here

The Complaint relies on a series of assumptions courts have repeatedly rejected in securities fraud actions.

*First*, as discussed in Section I.B, a plaintiff claiming securities fraud based on an undisclosed price-fixing conspiracy cannot simply assume price-fixing occurred.  A plaintiff must

---

[2]   Plaintiffs' rationale for avoiding these requirements highlights their dubious pleading strategy.  Plaintiffs complain they are unable to provide more particularized allegations because they are relying on complaints "with heavy redactions" in other actions.  Opp. 14.  In other words, Plaintiffs admit they are free-riding on allegations by other plaintiffs in other cases and complain they have not been able to copy more.  This is backwards.  As discussed in text, Plaintiffs are not entitled to rely on unsubstantiated allegations from other cases and certainly should not be relieved of their pleading obligations because they have been limited in their ability to copy other plaintiffs.

plead the price-fixing with particularity, which typically requires a guilty plea or similar confirmation of wrongdoing. *See, e.g., Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 690 (E.D. Mich. 2010) (company disclosed management member "violated company policies in connection with antitrust violations investigated by the DOJ"); *In re Infineon Techs. AG*, 2006 WL 1329887, at *2 (N.D. Cal. May 16, 2006) (company and four executives pled guilty). Here, there is no such finding of guilt. Instead, Plaintiffs assume a price-fixing conspiracy based on a subpoena, unadjudicated allegations in a civil case involving only two drugs at issue, and guilty pleas *by officers of a different company*. *E.g.*, Opp. 26.

*Second*, Plaintiffs insist an alleged price-fixing conspiracy is enough, "standing alone," to infer Defendants' intent to mislead investors. Opp. 29. That is wrong. Courts have repeatedly dismissed claims for lack of scienter *even where price-fixing was confirmed by a guilty plea*. *See, e.g., City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 676-77 (3d Cir. 2011) ("*Horizon III*") (affirming dismissal for lack of scienter despite fact that, unlike here, employees pled guilty to price-fixing that, unlike here, "affected a substantial portion of [defendant's] business"). As discussed in Section I.B.2(b), the law requires "additional allegations of *specific information conveyed to management and related to fraud*." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cr. 2013). There are no such allegations here.

*Third*, Plaintiffs' own authorities confirm that a defendant's general statements about its financial results or market competition can only be rendered misleading by undisclosed wrongdoing impacting a large part of the defendant's business. *Infineon*, 2006 WL 1329887, at *3, *6 (entire market for product, constituting 70% of company's earnings, subject to price-fixing scheme); *In re Sotheby's Holdings, Inc.*, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) at *4 & *4 n.2 (price-fixing impacted 95% of the market in sole line of business). There is nothing

approaching that here:  The only alleged "misrepresentations" were Allergan's broad statements about its financial results and competition in the pharmaceutical and generics market generally, which were not rendered false by purported price-fixing involving six drugs whose *total revenues* accounted for far less than 5% of Allergan's overall revenues for the Class Period.  Br. 19-20.

Plaintiffs' heavy reliance on *In re Propranolol Antitrust Litig.*, 2017 WL 1287515 (S.D.N.Y. Apr. 6, 2017), cited in the Opposition no fewer than 12 times (including the first paragraph), highlights that Plaintiffs' strategy amounts to little more than attempting to shoe-horn *antitrust allegations* into a 10(b) violation.  *Propranolol* involved claims under the Sherman Act, and the court thus applied the liberal pleading requirements of Rule 8, and—critically—was not called upon to assess any purported misrepresentations or alleged intent to mislead investors, which are the core requirements of the 10(b) claims at issue here.

This case much more closely resembles a more recent decision, rendered after Plaintiffs' Opposition was filed, in which the Court dismissed 10(b) claims against a pharmaceutical company, which allegedly failed to disclose a price-fixing scheme on generic drugs (including Doxycycline and Glyburide).  Ex. 1 to McClure Reply Cert.  Among other problems with the complaint in *Teva*, the plaintiffs copied allegations of price-fixing from other actions and thus simply "allege[d] that somebody else alleged a fact."  *Id.* at 24:23-24.  The Court also observed that guilty pleas by executives from *other companies*, which Plaintiffs rely on here as well, ¶¶ 20, 23, 185, 252, did not support an inference that any executive at Teva was involved, Ex. 1 to McClure Reply Cert. at 17:5-12.[3]

_____

[3]  Plaintiffs submitted a letter to the Court on April 12, 2018 (Dkt. 92), identifying as new authority the recent decision in *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018), without bringing to the Court's attention the subsequent ruling in *Teva*.  The *Teva* Court took the *Mylan* decision into consideration and found it distinguishable for reasons that apply here as well. Ex. 2 to McClure Reply Cert. at 37:10-12 (Actavis Plc 2014 10-K).  *First*, the central issue in

In sum, courts have repeatedly rejected the same pleading strategies Plaintiffs resort to here, including in a recent action analogous to this one.  This case should be dismissed.

### B.    The Complaint Fails To Allege The Elements Of Securities Fraud

The elements of Plaintiffs' Section 10(b)(5) claim are not in dispute.  In order to state a cause of action, Plaintiffs must set forth particularized allegations that Defendants intentionally or recklessly misled investors about the alleged price-fixing, and investors relied on those misrepresentations and were harmed as a result.  *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010); 15 U.S.C. § 78u-4(b).  Plaintiffs do not even adequately allege the underlying price-fixing, much less that Defendants misled investors about it, or intended to do so.

#### 1.    *Plaintiffs Fail To Adequately Allege Underlying Price-Fixing*

Plaintiffs' argument that the Complaint adequately pleads a price-fixing conspiracy rests on the false premise that such allegations need only be "plausible on their face."  Opp. 25.  In fact, "[w]here the [p]laintiffs' underlying allegation [in a Rule 10b-5 case is] that [a defendant] participated in an antitrust conspiracy, the [p]laintiffs must plead the facts of the alleged conspiracy with particularity."  *Gordon Gamm, et al. v. Sanderson Farms, Inc.*, 2018 WL 1319157, at *3 (S.D.N.Y. Jan. 19, 2018) (internal quotation marks omitted) (dismissing 10(b) claim for failure to plead underlying price-fixing scheme with particularity); *see also* Br. 22.

***Verapamil and Glyburide-Metformin***:  In an effort to short-cut their pleading obligation, Plaintiffs make the strange assertion that Defendants "concede" the Complaint "contains extensive

---

*Mylan* was the alleged misclassification of the EpiPen, which resulted in a settlement with the DOJ.  2018 WL 1595985, at *2.  Allergan has entered into no settlement agreements, nor has the DOJ asserted any claims against Allergan.  *Second*, in *Mylan* there were specific allegations that pricing decisions "involved all of Mylan's top executives" and that "the CEO and CFO," both of whom were named defendants, "reviewed any price adjustments and had the last word on pricing decisions."  *Id.* at *17.  Here, by contrast, there are no allegations that any named Defendant was involved in pricing decisions; instead, the Complaint alleges that persons who reported to people who in turn reported to the CEO were responsible for pricing decisions.  ¶¶ 85-88.

direct evidence" of price-fixing involving Verapamil and Glyburide-Metformin.  Opp. 24.  There is no such concession:  Defendants demonstrated that Plaintiffs "Fail[ed] to Allege Direct Evidence of Price-Fixing" for those two drugs and instead improperly copied unsubstantiated allegations from other complaints into their own pleading.  Br. 23.  Plaintiffs' response is to dismiss as "absurd," Opp. 25, the notion that a plaintiff cannot simply copy allegations from another complaint to defeat a motion to dismiss.  But Judge Underhill relied on that exact notion in dismissing a securities fraud claim less than two weeks ago.[4]  Ex. 1 to McClure Reply Cert. at 18:22-19:5 (rejecting pleading based on "an allegation of an allegation"); *see also* Br. 23.

Plaintiffs fail to confront an even more basic defect in their Complaint.  They claim prices were fixed for Verapamil and Glyburide-Metformin *without even alleging that prices for those drugs were affected.*  Plaintiffs' only answer is that their supposed direct evidence of a conspiracy "obviates" the need for "indirect evidence . . . like price increases."  Opp. 24.  But a price increase is not "indirect evidence" of price-fixing:  It is one of the elements that defines the existence of a price-fixing conspiracy.  *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d Cir. 1991) ("An antitrust plaintiff must prove that challenged conduct affected the prices, quantity, or quality of goods and services.").  With no indication that "collusive activity" actually affected prices for Verapamil or Glyburide-Metformin, the Complaint fails to allege that price-fixing took place, and Plaintiffs therefore cannot assert claims as to those drugs.  *Id.*

*Propranolol, Doxycycline, Ursodiol, and Desonide*:  With respect to the remaining four drugs, Plaintiffs claim the Complaint sets forth "copious facts indirectly demonstrating Allergan's

---

[4]   Other courts, in authority Plaintiffs do not address, have likewise rejected the copy-and-paste mode of pleading Plaintiffs rely on here.  *RSM Production Corp. v. Fridman*, 643 F.Supp.2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).  At best, Plaintiffs' cited cases indicate a split of authority, which this Court need not resolve given the additional defect described above, *i.e.*, that Plaintiffs allege "price-fixing" without actually alleging any effect on pricing.

collusive conduct." Opp. 25. Actually, Plaintiffs simply go all-in on the notion that subpoenas and investigations, as opposed to findings of guilt, permit them to *assume* Allergan personnel conspired to fix prices. Plaintiffs rely repeatedly on a subpoena, Opp. 2, 4, 8, 10, 17, 18, 27, 33, 36, 37, 39, 40, and on guilty pleas by personnel from other companies, *id.* at 1, 3, 6, 10, 26, 34.[5] The Third Circuit has rejected that mode of pleading. *Superior Offshore Int'l Inc. v. Bristow Group, Inc.*, 738 F. Supp. 2d 505, 517 (D. Del. 2000), *aff'd* 490 F. App'x 492 (3d Cir. 2012) ("[T]he mere occurrence of [an] investigation is equally consistent with Defendants' innocence.").

Plaintiffs' own cited authority demonstrates the deficiency in their allegations. Plaintiffs rely heavily on *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006). Opp. 34. But in *Suprema*, "[g]overnment investigations resulted in four individuals connected to Suprema's schemes pleading guilty to federal charges of, *inter alia*, conspiracy to commit securities fraud," and "admitt[ing] in their plea allocutions that they had created false invoices . . . *at the direction and with the participation of Suprema's management*." 438 F.3d at 263, 278. Unlike *Suprema*, there is no allegation in the Heritage guilty plea, which is the plea Plaintiffs rely upon, that any Allergan personnel were involved in any conspiracy. The *Teva* court criticized similar allegations based on the same Heritage guilty plea because there was nothing in the plea agreement "that named [the defendant] or identified . . . a contact at [the defendant], who that contact is, what level, how often they talked, [or] what they agreed to," and the Court stated, "[w]hat I'm missing is the

---

[5] Plaintiffs go as far as to claim that Actavis's receipt of a "criminal grand jury subpoena" is, "alone," enough to infer a conspiracy. Opp. 27. Plaintiff's own authority shows just the opposite. The DOJ ANTITRUST DIVISION MANUAL states expressly subpoenas are issued to investigate "*if*" criminal conduct occurred, not to signal criminal activity did occur. (5th ed. 2015) III-82, § F-1. Plaintiffs' contention that a Government *subpoena*—not even an indictment—raises an inference of guilt is contrary to "the most fundamental precepts underlying the American criminal justice system." *Kaley v. United States*, 134 S. Ct. 1090, 1114 (2014).

allegations that plausibly suggest there was a conspiracy by one or more of the named defendants." Ex. 1 to McClure Reply Cert. at 17:6-9, 22:1-3.

Plaintiffs also invoke supposed parallel price movements as support for their antitrust allegations, Opp. 25-26, but never refute Allergan's showing that the Complaint alleges the opposite.  Allergan demonstrated that supposed "co-conspirators" charged substantially different amounts for the same drugs.  Br. 26-27 (citing ¶¶ 111-12 (Mylan and Impax Propranolol price differed by *434%*); ¶¶ 127-28 (similar, Ursodiol); ¶¶ 144-45 (similar, Doxycycline); ¶¶ 160-61 (similar, Desonide)).  Plaintiffs' only answer is that "whether certain price increases constitute parallel movement is a highly factual question."  Opp. 27.  But Plaintiffs rely on a case where prices moved in "lockstep" and "near-perfect to perfect correlation;" thus, the factual question was the reason for those parallel movements, not whether they occurred.  *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *5, *32 (S.D.N.Y. Mar. 28, 2017).  Here, Plaintiffs' allegations, fully credited, show competitors undercutting each other's prices, which is inconsistent with price-fixing and thus leaves no "factual question" for the jury.[6]

2.    *Plaintiffs' Allegations Do Not Support A Strong Inference Of Scienter*

Even if Plaintiffs could adequately allege price-fixing took place—which they cannot— they fail to adequately allege that Defendants intended to mislead investors about it, as Section 10(b) requires.[7]  15 U.S.C. § 78u-4(b)(2).  The Opposition highlights this problem by relying on a

---

[6]   Plaintiffs also invoke allegations that Allergan personnel attended trade shows with personnel from other companies, thus creating the opportunity to conspire.  Opp. at 7, 26.  The Third Circuit has rejected such allegations.  *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc.*, 998 F.2d 1224, 1235 (3d Cir. 1993); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999); *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 199 (3d Cir. 2017). Plaintiffs also repeatedly rely on *Propranolol*, ignoring that the court rejected the Third Circuit's decision in *In re Baby Food*.  2017 WL 1287515, at *5.

[7]   Contrary to Plaintiffs' mischaracterization, Opp. 34, there is no allegation in the AG Action that any employee of Allergan destroyed evidence of any communications.

series of arguments relevant, if at all, to whether Allergan personnel intended to engage in price-fixing, and not to the pertinent question here—whether Defendants intended to defraud investors.

(a)    <u>The Government Investigation Does Not Support Scienter</u>

Plaintiffs rely on government investigations into purported price-fixing to support their allegation, not only that such price-fixing took place, but that Defendants were aware of it and intended to mislead investors about it.  Opp. 33.  Courts have held, however, that an investigation is "not sufficient to give rise to a requisite cogent and compelling inference of scienter[.]"  *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (dismissing complaint, despite government investigation, for failure to allege scienter).  Indeed, scienter to commit securities fraud cannot be assumed even where price-fixing is confirmed, as demonstrated by the fact that courts have repeatedly dismissed securities fraud claims for lack of scienter *even where allegations of pervasive price-fixing were substantiated by guilty pleas or otherwise adequately pled*.  *E.g.*, *Horizon III*, 442 F. App'x at 677 (affirming dismissal for lack of scienter despite admissions of pervasive price-fixing); *see also In re Mylan*, 2018 WL 1595985, at *15 ("even if the Complaint adequately pleaded underlying unlawful conduct, it has not alleged with particularity that Defendants acted with the requisite scienter"); Br. 29-33.[8]

(b)    <u>Plaintiffs Are Not Entitled To A Core Operations Inference</u>

As Allergan demonstrated, a "core operations" inference is unavailable because the Complaint does not allege the purported price-fixing impacted a significant portion of Allergan's "core business."  Br. 32-33 n.15 (citing *Kid Brands*, 736 F.3d at 247).  Plaintiffs respond with a

---

[8]   Plaintiffs' authorities, Opp. 33, for the proposition that Government investigations "may be considered" just confirm an investigation alone does not support scienter.  *See*, *e.g.*, *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) (dismissing claim for failure to allege scienter, noting "government investigations cannot bolster allegations of scienter that do not exist, and, as currently plead, the government investigations are just that, investigations").

strained analogy, Opp. 30-31, to *Institutional Inv'rs Grp. v. Avaya, Inc.* 564 F.3d 242 (3d Cir. 2009).  Unlike here, the plaintiffs in *Avaya* alleged specific facts indicating the defendant was engaged in pervasive, undisclosed discounting across its *entire* key business.  *Id.* at 269-270. Plaintiffs' other cited cases similarly involved wrongdoing that impacted *entire* business units or the *primary* source of company revenue.[9]  "No such circumstances are present here."  *Kid Brands*, 736 F.3d at 246.

The core operations inference also does not apply because the allegations of "corporate management's general awareness of the day-to-day workings of the company[]" were not supplemented with "additional allegations of *specific information conveyed to management and related to fraud*."  *Id.* at 247 (internal quotation marks and citation omitted).  Plaintiffs do not identify any non-public information conveyed to management that would have alerted them to price-fixing.  Plaintiffs rely instead on "public scrutiny," Opp. 32, fully known to investors.  This gap in Plaintiffs' allegations distinguishes this case from Plaintiffs' authority and places it on all fours with precedent rejecting inadequately pled securities fraud claims.  *Kid Brands*, 736 F.3d at 246 ("*Avaya* has limited precedential value" where no specific information conveyed); *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 424 (D. Del. 2009) ("*Horizon I*") (distinguishing *Avaya* because price-fixing, unlike fraud in *Avaya*, is difficult to detect); *cf Mylan*, 2018 WL 1595985, at *17 (scienter satisfied where specific allegation that pricing decisions "involved all of Mylan's top executives" and that the CEO and CFO "reviewed any price adjustments and had the last word on pricing decisions").

---

[9]  *E.g.*, *In re Infineon Techs. AG Sec. Litig.*, 2008 WL 11333700, at *8 (N.D. Cal. Jan. 25, 2008) (price-fixing involved company's largest product by revenue, and allegations included specific meeting and correspondence to fix price of product and guilty pleas by executives confirming conspiracy); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709-12 (7th Cir. 2008) (allegations related to company's "'flagship' product," and its replacement—which "were to Tellabs as Windows XP and Vista are to Microsoft").

Plaintiffs cannot salvage their "core operations" theory by arguing the alleged price-fixing "could not be done without the knowledge and approval of the Company's senior executives." Opp. 31. "[M]any a corporation has paid heavy damages for antitrust violations committed by low-level . . . managers," *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 456 (7th Cir. 1982), and courts have repeatedly held management's scienter cannot be inferred from even pervasive price-fixing. *E.g.*, *Horizon III*, 442 F. App'x at 676-77; *Sotheby's*, 2000 WL 1234601, at *7; *Advanta*, 180 F.3d at 539. There is even less basis for an inference here, where the supposed price-fixing related to just six of Allergan's 550 generics. Ex. 2 to McClure Reply Cert. at 2, 12.

      (c)      <u>Plaintiffs' Motive And Opportunity Allegations Are Insufficient</u>

Plaintiffs insist Defendants had an "industry-specific motive" to engage in price-fixing because the prices for generic drugs had "bottomed out," again ignoring that the issue in this case— unlike in the *Propronolol* decision they rely upon—is whether Defendants intended to mislead investors. Opp. 34-35. *In a securities fraud action*, an alleged generalized profit motive cannot support a claim. *Kid Brands*, 736 F.3d at 245-46; Br. 32.

Plaintiffs also fail to refute Defendants' showing that the alleged stock sales were not unusual and cannot be used to establish scienter, because (i) the sales occurred ***before*** nearly all of the alleged wrongdoing; (ii) Defendants' class-period sales were not unusual relative to pre-class period sales; and (iii) all Defendants held on to more than 60% of their shares, and Allergan's CEO and CFO sold ***zero*** shares. Br. 33-35. Plaintiffs have no response to the first two points, and their only response to the last is to speculate that it is "reasonable to assume that the commencement of the Congressional investigation into price-fixing preempted any stock sales after October 2, 2014." Opp. 35. That "assum[ption]" conflicts with Plaintiffs' theory that price-fixing for Propranolol *began* after October 2, 2014 and price-fixing for Ursodiol continued after October 2, 2014. ¶¶ 108, 109, 127, 128, 180.

(d)      Plaintiffs Cannot Allege Defendants Acted Against Self-Interest

Defendants argue the "astronomical price increases" alleged in the Complaint were, "absent a price-fixing agreement, clearly against the co-conspirators' self-interest." Opp. 32.  This is yet another argument addressing the supposed intent to engage in price-fixing and says nothing about any supposed intent to commit securities fraud, which are two different matters—as confirmed by multiple decisions dismissing securities fraud claims even where price-fixing was confirmed.  Section I.B.2(a), *supra*.

Plaintiffs' argument is not only misdirected, it also ignores Third Circuit guidance that it is legal for a company to raise prices when it sees a competitor doing so.  *Valspar,* 873 F.3d at 193.  Plaintiffs do not dispute that Actavis frequently raised its prices *months after* other competitors.  *See* Br. 26 (citing ¶¶ 111-12 (Actavis not matching Impax's February 2015 Propranolol prices until July 2015)); *see also id.* ¶¶ 144-45 (similar, Doxycycline).  As the *Teva* Court observed, that pattern does not suggest coordinated price-fixing, much less securities fraud, but reflects a reasonable decision by Actavis to raise prices to take advantage of a market that would apparently bear it.  *See* Ex. 1 to McClure Reply Cert. at 41:21-42:1 ("[h]ow is it against [Teva's] self-interest to go to a 275 percent share" when "[t]he others are up there").

3.      *Plaintiffs Have Not Alleged A Materially False Or Misleading Statement*

The Opposition confirms Defendants' showing, Br. 15-22, that Plaintiffs cannot identify a single representation, much less misrepresentation, concerning any of the six at-issue drugs.

(a)      The Statements Concerning Competition In The Overall Generics Markets Were Accurate And Not Misleading

Plaintiffs claim Defendants had an obligation to disclose purported price-fixing on six drugs so their statements about competition in the generics business would not be misleading.  Opp. 15-17.  But it is undisputed Allergan's generics business was comprised of approximately

12

250 drugs in the U.S. and 550 drugs worldwide.[10]  Ex. 2 to McClure Reply Cert. at 2, 12.  Courts have repeatedly rejected efforts by plaintiffs to convert alleged wrongdoing confined to a segment of a defendant's business into a 10(b) claim.  *Galati v. Commerce Bancorp, Inc.*, 220 F. App'x 97, 102 (3d Cir. 2007) (general statements regarding business unit did not "put into play," and thus require disclosure of, kickback scheme); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 174 (3d Cir. 2014) (similar).

Plaintiffs are simply wrong that "courts routinely find similar statements concerning competition to be actionable where the issuer was engaged in anticompetitive conduct."  Opp. 17.  Plaintiffs' cited cases, *id.* at 15-17, all involve an admission or finding of wrongdoing *and* anticompetitive behavior that impacted a significant portion of the company's business.[11]  Neither circumstance is present here.  Plaintiffs' cited cases further confirm a statement must have a "direct connection to" a material omitted fact to be rendered false or misleading.  *See*, *e.g.*, *Menkes v. Stolt-Nielsen S.A.*, 2005 WL 3050970, at *8 (D. Conn. Nov. 10, 2005).  In contrast, a "generic description of the state of the market as a whole" will be "too remote . . . to compel disclosure[.]"  *Id.*  (rejecting claims based on statements remote from alleged fraud).  Here, the alleged price-fixing only touches on a negligible portion of Allergan's generics business and therefore cannot render general statements regarding the generics industry misleading.  Br. 16-20.

Plaintiffs seek to avoid this reality by pointing out that three of the six at-issue drugs were once included on a list of "key products."  Opp. 17.  Plaintiffs put far more weight on that

---

[10]   Plaintiffs claim drugs sold outside the U.S. are "not at issue," Opp. 16, but Plaintiffs allege misstatements about "the generic pharmaceutical industry" with no domestic limitation.  ¶ 199.
[11]   *Infineon*, 2006 WL 1329887, at *1 (defendant pled guilty to price-fixing); *Chamberlain*, 757 F. Supp. 2d at 696 (defendant announced the suspension of an executive for wrongdoing and involvement with matters under investigation by the DOJ); *Sotheby's* 2000 WL 1234601, at *4 n.2 (sole competitor was granted amnesty by DOJ); *In re Micron Techs., Inc. Sec. Litig.*, 2007 WL 576468, at *2 (D. Idaho Feb. 21, 2007) (former employee of defendant pled guilty to obstructing price-fixing investigation).

designation than the undisputed facts permit.  Allergan identified more than twenty other "key products," and in total Allergan sells approximately 550 global generic products.  Ex. 2 to McClure Reply Cert. at 2, 12.  Further, Plaintiffs concede Allergan's **total** revenue from the six at-issue drugs—including pre-class period sales from as early as 2010—was far less than 5% of Allergan's revenues for the Class Period.  Br. 19-20.  This immaterial amount is far less than any court has deemed sufficient to render general market statements false or misleading.

(b)  Saunders' Statements Regarding the DOJ Subpoena Were Accurate and Not Misleading

Plaintiffs do not contend that the DOJ subpoena related to any of the drugs at issue in this case.  Plaintiffs nevertheless call it a "fact-intensive" question as to whether Saunders' statement that the subpoena was a "red herring" and "not that significant" was false.  Opp. 18.  That makes no sense.  If there is no factual allegation that Saunders was talking about the at-issue drugs—and there is no such allegation—then his statement cannot be rendered misleading by the purported price-fixing on those drugs.  *City of Edinburgh*, 754 F.3d at 174 (omission not actionable where affirmative statements unrelated to subject-matter of omission).

(c)  The Statements Concerning Revenue And Growth Were Accurate And Not Misleading

Defendants established in their Opening Brief that Allergan's revenue reports and representations about financial performance were not misleading because the Complaint includes no allegations those statements were false, nor that the alleged price-fixing materially impacted Allergan's revenues.  Br. 16-20.  The Opposition fails to refute that showing.

*First*, Plaintiffs do not claim Allergan reported revenue it did not actually generate but argue instead that revenues were "inflated" because they included unspecified amounts supposedly generated by price-fixing.  Opp. 22-23.  However, a financial report that accurately discloses total revenues—even where a portion allegedly came from an improper source—cannot support a 10(b)

14

claim. *Galati*, 220 F. App'x at 102 (financial figures not misleading due to inclusion of illegal revenue because "[f]actual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b)"); *see also In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *6 (S.D.N.Y. Sept. 19, 2017) ("[A]ccurately reported income derived from illegal sources is non-actionable despite a failure to disclose the illegality.").[12]

*Second*, Plaintiffs have no good answer to Allergan's showing that general statements regarding Allergan's "strong" global growth and strong results, Opp. 19-22, are the sort of "puffery" courts reject as grounds for a 10(b) claim. *Galati*, 220 F. App'x at 102. Plaintiffs cite *Galati* without confronting the fact that the Third Circuit addressed nearly the same scenario now at issue: It rejected claims that representations about "strong" financial performance—like the representations here—were rendered false by a failure to disclose underlying wrongdoing—again, the same theory Plaintiffs advance here. *Id.*; *see also In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016) (attributing growth to diabetes products not misleading despite undisclosed kickback scheme because statements did not "attribute growing sales of diabetes products to pharmacies implicated in the alleged illegal kickback scheme").

*Third*, Plaintiffs assume, *without identifying any supporting allegations*, the supposed price-fixing of the six at-issue drugs "dr[ove] the revenue and market share of Allergan's generics business." Opp. 19. The Complaint does not allege Defendants profited at all from the purported price-fixing, much less materially—in fact, it is undisputed that revenues from the six relevant drugs combined were less than 5% of total revenues, with no indication in the Complaint as to what portion of those immaterial amounts, if any, resulted from the alleged scheme. Br. 19-20.

---

[12]  Plaintiffs rely on out-of-Circuit authorities where, unlike here, the plaintiffs alleged specific GAAP violations resulting in inaccurate revenue reports. *In re Electrobras Sec.* 245 F. Supp. 3d 450, 465 (S.D.N.Y. 2017) (bribes improperly not accounted for as expenses); *In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *2 (N.D. Cal. Nov. 17, 2005) (GAAP violations).

This leaves no basis for Plaintiffs' assumption that Allergan was incorrect when it attributed its growth and earnings to, among other things, the sale of drugs not at issue in this case, and "product opportunities from our industry leading R&D pipeline[.]"  ¶ 195.

Finally, Plaintiffs' authorities do not support their theory that general statements about revenue can be rendered misleading by a failure to disclose purported wrongdoing, but stand instead for the proposition that a defendant's attribution of revenue or growth to a ***specific*** source other than the ***actual*** (and sometimes illegal) source can be misleading.  *E.g.*, *In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 823 (E.D. Pa. 2001).  Where, as here, "there is no allegation in the Complaint that [Allergan's] involvement with a[] [price-fixing] scheme in connection with [the at-issue drugs] *was the source of the financial success* referred to in [Allergan's] statements," statements regarding the source of revenue are not misleading.  *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 357–59 (S.D.N.Y. 2008) (distinguishing *Providian* and dismissing action where no allegation that defendants' illegal revenue was the true source of its financial success).[13]

(d)    <u>Statements Concerning The Corporate Code Of Conduct Were Accurate and Not Misleading</u>

Defendants showed in their moving papers that Plaintiffs cannot predicate liability on Allergan's statements that it had adopted a Code of Conduct, because those statements were indisputably true.  Br. 22 (citing *Horizon I*, 686 F. Supp. 2d at 415).  Plaintiffs respond by citing inapposite out-of-Circuit cases, Opp. 23, involving statements of ethics that, unlike here, were made to quash public concerns of misconduct.  *See*, *e.g.*, *Eletrobras*, 245 F. Supp. 3d at 463 (basing liability on company's "repeated references" to "its adherence to its Code of Ethics" "made specifically in response to damaging media reports about bribery and bid-rigging"); *In re*

---

[13]  Plaintiffs' argument that illicit activity is inherently material ignores that "the obligation to disclose uncharged illegal conduct does not arise from the materiality of th[e] information alone." *Menkes*, 2005 WL 3050970, at *7.

*Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (statements regarding ethics actionable when "made repeatedly in an effort to reassure the investing public about the Company's integrity"). There is no allegation Allergan invoked its Code of Conduct in response to questions regarding alleged price-fixing, and merely stating it had such a code is not actionable. *See* Br. 22; *see also Mylan*, 2018 WL 1595985, at *10.

4.   <em>Plaintiffs Have Not Alleged Loss Causation</em>

As Defendants demonstrated, a disclosure that merely raises the possibility of fraud will not support loss causation unless the fraud is *confirmed*. Br. 35 (citing *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014), *as amended* (Sept. 11, 2014)). Plaintiffs make no attempt to distinguish Defendants' authorities, including two Courts of Appeals decisions, but even Plaintiffs' own cited cases impose the same requirement. *See*, *e.g.*, *In re Bradley Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 829 (D.N.J. 2006) (disclosure of SEC subpoena "began to reveal to the market place what the April 27 Press Release *later confirmed*"); *see also Hull v. Glob. Digital Sols., Inc.*, 2017 WL 6493148, at *5 & n.13 (D.N.J. Dec. 19, 2017) (finding loss causation where defendants charged in SEC complaint either settled or admitted wrongdoing). Thus, Plaintiffs' reliance, Opp. 36, on the announcement of a subpoena is unavailing since it did not reveal any fraud. The November 2016 Bloomberg article similarly fails to establish loss causation because it contained no new news. It merely stated that the DOJ *may* bring charges against *unspecified* companies by year-end: no such charges were filed against Allergan.[14]

## II.   <u>PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED</u>

Defendants demonstrated in their Opening, Br. 37-39, that Plaintiffs' claims under Section 14(a) were deficient because the Complaint fails to "specify each statement [in Defendants' proxy

---

[14]   Plaintiffs concede Allergan had announced the sale of Actavis for $40.5 billion before the DOJ subpoena was announced and subsequently sold the unit for that exact price. Br. 36. This demonstrates the "revelation" of the subpoena did not devalue the company or harm investors.

statements] alleged to have been misleading." *E.g.*, *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1328 (3d Cir. 2002).  Plaintiffs respond that the Complaint identifies the financial statements and "alleges that the Proxies incorporated by reference the 2013 Form 10-K, and the 1Q, 2Q, and 3Q 2014 Forms 10Q."  Opp. 39.  But as demonstrated above, Section I.B.3(b), there is no allegation the financial figures were inaccurate.  And Plaintiffs' reference to a passage in the proxy statements incorporating a raft of other documents "by reference" cannot satisfy Plaintiffs' burden to "specify" the misrepresentations supporting their claim.  *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)(1)).[15]

Lastly, Plaintiffs argue against themselves by insisting the statute of limitations has not run on their Section 14(a) claims despite the disclosure of the DOJ subpoena more than a year before the initial complaint was filed.  Opp. 39, n.22.  Plaintiffs' 10(b) claims depend on the notion that the disclosure of the subpoena "strongly suggest[ed]" Actavis was engaged in price-fixing.  ¶¶ 16, 183, 252.  That is incorrect (Section I.B.2(a) *supra*), and all of Plaintiffs' claims therefore fail.  But if that assertion were correct, as Plaintiffs need it to be to sustain their 10(b) claims, then investors had sufficient notice to start the Section 14 limitations period, and the Section 14 claim is untimely.  *NAHC*, 306 F.3d at 1325.[16]  Plaintiffs cannot simultaneously claim notice of the subpoena strongly indicated price-fixing and deny the same notice triggered the limitations period.

## CONCLUSION

For the reasons set forth above and in Defendants' opening submission, Plaintiffs' Second Amended Complaint should be dismissed in its entirety.

---

[15] Plaintiffs admit that their 14(a) allegations are a blanket incorporation of their 10(b) claims. Opp. 39-40.  Thus, Plaintiffs did not "exercise[] care in . . . delineating the allegations that support the negligence cause of action as distinct from the fraud." *Suprema*, 438 F.3d at 273.  Accordingly, Plaintiffs' 14(a) claims fail for lack of scienter.  Br. 28-33.

[16] Plaintiffs concede they did not purchase preferred shares.  Opp. 40.  Thus, Plaintiffs lack Article III standing to bring claims on behalf of Preferred shareholders.  Br. 39-40.

Dated:  April 23, 2018

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Richard Schirtzer, Esq. (*pro hac vice*)
Molly Stephens, Esq. (*pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Adam Abensohn, Esq. (*pro hac vice*)
Jesse Bernstein, Esq. (*pro hac vice*)
Leigha Empson, Esq. (*pro hac vice* application pending)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendants Allergan plc, Brenton L. Saunders, Paul M. Bisaro, Maria Teresa Hilado, R. Todd Joyce, Sigurdur O. Olafsson, David A. Buchen, James H. Bloem, Christopher W. Bodine, Tamar D. Howson, John A. King, Ph.D., Catherine M. Klema, Jiri Michal, Jack Michelson, Patrick J. O'Sullivan, Ronald R. Taylor, Andrew L. Turner, Fred G. Weiss, Nesli Basgoz, M.D., and Christopher J. Coughlin*

Respectfully submitted,

**REED SMITH LLP**

*s/ Shannon McClure*
Shannon McClure, Esq.
Julia A. Lopez, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0824
smcclure@reedsmith.com
jalopez@reedsmith.com