# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW
_____

| | | | |
|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | PETER G. STEWART | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | FRANCIS C. HAND | WILLIAM SQUIRE |
| JAN ALAN BRODY | A. RICHARD ROSS | AVRAM S. EULE | STEPHEN R. DANEK |
| JOHN M. AGNELLO | CARL R. WOODWARD, III | CHRISTOPHER H. WESTRICK* | DONALD A. ECKLUND |
| CHARLES M. CARELLA | MELISSA E. FLAX | JAMES A. O'BRIEN  III** | MEGAN A. NATALE |
| JAMES E. CECCHI | DAVID G. GILFILLAN | | ZACHARY S. BOWER+ |
| | G. GLENNON TROUBLEFIELD | OF COUNSEL | MICHAEL CROSS |
| JAMES D. CECCHI (1933-1995) | BRIAN H. FENLON | | CHRISTOPHER J. BUGGY |
| JOHN G. GILFILLAN III (1936-2008) | LINDSEY H. TAYLOR | *CERTIFIED BY THE SUPREME COURT OF | JOHN V. KELLY III |
| ELLIOT M. OLSTEIN (1939-2014) | CAROLINE F. BARTLETT | NEW JERSEY AS A CIVIL TRIAL ATTORNEY | MICHAEL A. INNES |
| | | **MEMBER NY AND MA BARS ONLY | |

**5 BECKER FARM ROAD**
**ROSELAND, N.J.  07068-1739**
**PHONE (973) 994-1700**
**FAX (973) 994-1744**
**www.carellabyrne.com**

+MEMBER FL BAR ONLY

August 10, 2018

**VIA ECF**
The Honorable Katherine S. Hayden
United States District Judge
Frank R. Lautenberg U.S. P.O. & Courthouse
2 Federal Square
Newark, New Jersey 07102

> **Re:   *In re Allergan Generic Drug Pricing Sec. Litig.*
> Civil Action No. 2:16-cv-09449 (KSH)(CLW)**

Dear Judge Hayden:

This firm, along with co-lead counsel, represents Lead Plaintiffs Sjunde AP-Fonden and Union Asset Management Holding AG.  Lead Plaintiffs write in response to Defendants' August 6, 2018 letter ("Letter") regarding the recent decision in *Utesch v. Lannett Co., Inc.*, 2018 WL 3629090, at *1 (E.D. Pa. July 31, 2018) ("*Lannett*").  For the reasons below, Lead Plaintiffs respectfully submit that *Lannett* does not support dismissal of the Second Amended Complaint ("SAC") (ECF No. 82).

*Lannett* is contrary to the recent decisions in *In re Mylan N.V. Sec. Litig.*, 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) and *Roofer's Pension Fund v. Papa et al.*, No. 16-2805, 2018 WL 3601229 (D.N.J.) (Arleo, J.).  For the reasons stated in Lead Plaintiffs' opposition brief and supplemental submissions (ECF Nos. 91, 92, 100, 103, 104), those decisions correctly sustained securities fraud class actions against Allergan's alleged co-conspirators.[1]

There are several aspects of the *Lannett* decision that bear mention here.

First, the court in *Lannett* erred in rejecting direct evidence of corporate culpability and the weight of the evidence presented in the redacted Amended AG Complaint. The *Lannett* court afforded no weight to direct evidence of price collusion—in the form of telephone calls, emails and text messages to and from high-level Actavis (Allergan) executives that were gathered in

_____

[1] *See also In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 16-MD-2724, 2018 WL 2688315 (E.D. Pa. June 5, 2018); *In re Propranolol Antitrust Litig*, 249 F. Supp. 3d 712 (S.D.N.Y. 2017).

August 10, 2018
Page 2

state and federal investigations—because such evidence "did not mention a single individual defendant." Letter at 2.  The court's rejection of this strong direct evidence ignores that the Amended AG Complaint redacted out the names of the Actavis (Allergan) executives (possibly Defendants) who directly participated in the fraudulent conspiracy.  Faulting Plaintiffs for a failure to plead this level of detail is contrary to Third Circuit authority holding that the PSLRA's "[heightened pleading] standard is 'relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control.'"  *In re Schering-Plough Corp./Enhance Sec. Litig.*, 2009 WL 2855457, at *2 (D.N.J. Sept. 2, 2009) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

Moreover, courts in this Circuit have found that scienter against a corporation is established where, as here, "'the pleaded facts create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.'" *Chao Sun v. Daqing Han*, 2015 WL 9304542, at *12 (D.N.J. Dec. 21, 2015) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008) ("It is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant.")); *see also In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *10-*11 and n.3 (S.D.N.Y. Sept. 19, 2017) (finding corporate scienter on basis of an unspecified regional executive, who was engaged in the criminal activity underlying the fraud). Here, the SAC alleges, by name, the roles played by several senior executives sufficient to establish scienter at this stage.

Specifically, the SAC alleges that Andrew Boyer, Senior VP of Generic Sales, Marketing and National Accounts, was responsible for the Company's pricing decisions and reported directly during the Class Period to Defendant Olaffson, the President of Actavis Pharma (the segment that included Allergan's generics business), and to Defendant Buchen, Allergan's EVP of North American Generics and International.  SAC ¶¶ 48, 49, 85, 88.  Olaffson and Buchen each, in turn, reported directly to Defendants Bisaro and, later, Saunders (Allergan's two CEOs during the Class Period).  *Id.*  Even assuming that Boyer's scienter cannot be imputed to Allergan—it can—the SAC sufficiently pleads scienter for the Individual Defendants. Olaffson, Buchen, Bisaro and Saunders all had direct access to Boyer and, at a minimum, were reckless in not inquiring about the true reason for the historically massive price hikes.  *See Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (scienter established where defendants "knew . . . ***or had access to*** information suggesting that their public statements were not accurate").

Second, unlike in *Lannett*, the Individual Defendants here made false and misleading statements specifically denying the existence of anti-competitive forces in the generic drug markets.  Such unequivocal denials are "powerful evidence of scienter." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009).  For example:

- During a May 11, 2015 earnings call, in response to a question from an analyst regarding Allegan's view on "generic drug pricing given there have been concerns that it may not be favorable going forward," Defendant Saunders stated:  "We haven't seen much of a change despite all the fanfare and publicity around drug pricing and generics.  There are

August 10, 2018
Page 3

> obviously a few products that go up but *the model for generics is price decreases as more competitors come into the market*."  SAC ¶ 211.

- On August 6, 2015, in the face of questioning about Allegan's receipt of the DOJ subpoena, Defendant Saunders falsely downplayed it, stating that "the DOJ investigation is really a *red herring*," "not that significant," and any price increases in Allergan's generic drug business were due to "supply and demand," not price-fixing. *Id.* ¶ 214.

That Defendants gave explicit and unambiguous, yet invariably false, answers to analysts strongly supports scienter.  *Avaya*, 564 F.3d at 269.  "Because of the context (specific analyst inquiries) and content (consistent denials of unusual [pricing]) of [Defendants'] statements, the possibility that [Defendants] [were] ignorant is not necessarily exculpatory" because even if unaware of the pricing competition, "[they] might be culpable as long as what [they] knew made obvious the risk that [their] confident, unhedged denials . . . would mislead investors." *Id.* at 270 (sustaining scienter allegations that CFO acted recklessly).[2]  Indeed, any inference that Defendants did not know of the anti-competitive scheme alleged in the SAC "is directly contradicted by the fact that [Defendants] specifically addressed [competition and the DOJ subpoena] in [their] statements."  *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014).  *Lannett* did not involve any of the stark denials of anti-competitive conduct made by Defendants here.

Third, the *Lannett* court was wrong to discount the weight of the Congressional Letter, the DOJ Subpoena, and the subject matter of the information sought, all of which gave rise to a duty to investigate the existence of price collusion and a duty to monitor changes in the Company's generic drug pricing. "When the facts known to [an executive] place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk." *Makor Issues & Rights, Ltd. v. Tellabs Inc*., 513 F.3d 702, 704 (7th Cir. 2008) (Posner, J.).  At a minimum, Defendants recklessly "failed to review or check information that they had a duty to monitor"; under these circumstances, the "egregious refusal to see the obvious, or to investigate the doubtful" supports an inference that they knew or recklessly ignored that their statements were incorrect.  *Novak*, 216 F.3d at 308.

---

[2] The Third Circuit noted that, even absent evidence of direct knowledge by the CFO, such as a "particular document or conversation," several statements made by the CFO about the stable nature of the company's pricing environment were sufficient to give rise to the strong inference that he knew or was reckless in not knowing about the undisclosed pricing pressures.  *Id.* at 268-270.

August 10, 2018
Page 4


       Thank you for your attention to this matter.  If the Court has any questions, we are available at your convenience.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

/s/ James E. Cecchi

JAMES E. CECCHI

cc:     All counsel (via ECF and email)