# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
## COUNSELLORS AT LAW

| | | | |
|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | **5 BECKER FARM ROAD**<br>**ROSELAND, N.J. 07068-1739**<br>PHONE (973) 994-1700<br>FAX (973) 994-1744<br>www.carellabyrne.com | PETER G. STEWART |
| BRENDAN T. BYRNE | DONALD F. MICELI | | FRANCIS C. HAND |
| JAN ALAN BRODY | A. RICHARD ROSS | | AVRAM S. EULE |
| JOHN M. AGNELLO | CARL R. WOODWARD, III | | CHRISTOPHER H. WESTRICK* |
| CHARLES M. CARELLA | MELISSA E. FLAX | | JAMES A. O'BRIEN III** |
| JAMES E. CECCHI | DAVID G. GILFILLAN | | |
| | G. GLENNON TROUBLEFIELD | | OF COUNSEL |
| JAMES D. CECCHI (1933-1995) | BRIAN H. FENLON | | |
| JOHN G. GILFILLAN III (1936-2008) | LINDSEY H. TAYLOR | | *CERTIFIED BY THE SUPREME COURT OF |
| ELLIOT M. OLSTEIN (1939-2014) | CAROLINE F. BARTLETT | |   NEW JERSEY AS A CIVIL TRIAL ATTORNEY |
| | | | **MEMBER NY AND MA BARS ONLY |

RAYMOND J. LILLIE
WILLIAM SQUIRE
STEPHEN R. DANEK
DONALD A. ECKLUND
MEGAN A. NATALE
ZACHARY S. BOWER+
MICHAEL CROSS
CHRISTOPHER J. BUGGY
JOHN V. KELLY III
MICHAEL A. INNES

+MEMBER FL BAR ONLY

September 20, 2018

**VIA ECF**
The Honorable Katherine S. Hayden
United States District Judge
Frank R. Lautenberg U.S. P.O. & Courthouse
2 Federal Square
Newark, New Jersey 07102

      Re:   *In re Allergan Generic Drug Pricing Sec. Litig.*
             Civ. No. 2:16-cv-09449 (KSH)(CLW)

Dear Judge Hayden:

      This firm, along with co-lead counsel, represents Lead Plaintiffs Sjunde AP-Fonden and Union Asset Management Holding AG. Lead Plaintiffs write in response to Defendants' September 12, 2018 letter ("Letter") regarding the recent out-of-circuit decision in *Fleming v. Impax Lab., Inc.*, 16-cv-06557-HSG (N.D. Cal. Sept. 7, 2018) ("*Impax*"). For the reasons below, Lead Plaintiffs respectfully submit that *Impax* does not support dismissal of the Second Amended Complaint ("SAC") (ECF No. 82).

      *Impax* is contrary to recent decisions within this District and the Southern District of New York where courts have sustained similar claims against Defendant Allergan's alleged co-conspirators. *See Roofer's Pension Fund v. Papa et al.*, No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ("*Perrigo*") (Arleo, J.); *In re Mylan N.V. Sec. Litig.*, 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018). For the reasons stated in Lead Plaintiffs' opposition brief and supplemental submissions (ECF Nos. 91, 92, 100, 103, 104, 108), those decisions correctly sustained securities fraud class actions against Allergan's alleged co-conspirators.[1]

      There are several aspects of *Impax* that bear mention here.

      *First*, unlike Allergan, drug manufacturer Impax is <u>not</u> a defendant in the State AG Action brought (and recently sustained) by 44 State Attorneys General in the Eastern District of Pennsylvania. By way of background, the State AG Action broadly expanded the scope of the

---

[1]    *See also In re Generic Pharmaceuticals Pricing Antitrust Litig.-Connecticut, et al. v. Aurobindo Pharma USA, Inc., et al.*, 2:17-cv-3768, 2018 WL 2688315 (E.D.Pa. June 5, 2018.) (the "*State AG Action*") (granting State Attorneys' General's motion to amend their complaint against Allergan and others); *In re Propranolol Antitrust Litig*, 249 F. Supp. 3d 712 (S.D.N.Y. 2017) (denying Allergan and other defendants' motion to dismiss).

September 20, 2018
Page 2

Attorneys General's action, detailed numerous examples of price fixing and collusion based on extensive discovery, and named as defendants Allergan, along with seventeen other generic drug manufacturers (but not Impax).  On June 5, 2018, the district court presiding over the Generic Drugs MDL granted the Attorneys General's motion to amend and file the Amended AG Complaint, and concluded that "amendment would not be futile" because the Amended AG Complaint adequately "alleges that Defendants [including Allergan] reached agreements as to specific drugs and that groups of Defendants [including Allergan] entered into agreements to allocate market share as competitors entered the market for a particular drug."  2018 WL 2688315, at *3.

*Second*, *Impax* supports denial of Defendants' motion to dismiss because the court held that several similar false statements and omissions satisfied the heightened pleading standards of the PSLRA.  *See* Impax, at 6 ("Plaintiff adequately asserts that Defendants misled investors by attributing the digoxin and pyridostigmine price increases to natural market factors, including competition and sales [and that] Defendants' omission of collusive activity is material, as reasonable investors would likely view the disclosure of collusive price fixing as altering the 'total mix of information available.'").[2]

*Third*, for reasons similar to those stated in prior supplemental submissions (*see, e.g.*, ECF. No. 108), the court's conclusions concerning defendants' scienter are inapposite.  For example, the court in *Impax* cursorily concluded that that complaint failed to adequately allege scienter because it lacked allegations explaining "how the individual Defendants had personal access to, or control over, [generic drug] pricing."  *Impax*, at 6-7.  The allegations of scienter in this Action are starkly different.  Here, Plaintiffs have alleged direct evidence of price collusion in the form of redacted calls, emails and text messages to and from high-level Allergan executives (including potentially Defendants) that were gathered in state and federal investigations. Moreover, as Plaintiffs have argued repeatedly, courts in this Circuit have found that scienter against a corporation is established where, as here, "'the pleaded facts create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.'"  *Chao Sun v. Daqing Han*, 2015 WL 9304542, at *12 (D.N.J. Dec. 21, 2015) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008) ("It is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant.")); *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *10-*11 and n.3 (S.D.N.Y. Sept. 19, 2017) (finding corporate scienter on basis of an unspecified regional executive, who was engaged in the criminal activity underlying the fraud).  Further, here, the SAC alleges, by name, the roles played by several senior executives, all of whom reported directly to the Individual Defendants, more than sufficient to establish scienter at this stage.  SAC ¶¶ 48, 49, 85, 88.  *See Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (scienter established where defendants "knew . . . **or had access to** information suggesting that their public statements were not accurate").

---

[2] While a small number of the *Impax* defendants' statements mention the generic drugs at issue in that action, the bulk of the allegedly false statements concern the generic drug market generally.

September 20, 2018
Page 3

*Finally*, contrary to Defendants' characterization, *Impax* supports Plaintiffs' loss causation allegations. The Complaint alleges two loss causation events: the August 6, 2015 disclosure that Allergan had "received a subpoena from the DOJ" and the November 3, 2016 disclosure that the DOJ may press criminal charges against generic drug manufacturers, both of which were followed by significant declines in the price of Allergan securities. ¶¶ 234-42. The *Impax* complaint, however, does not allege any corrective disclosures relating to the government's investigation into price collusion. Rather, its initial corrective disclosures concerned poor earnings announcements that the Company attributed, in part, to increased competition in the generics business. *See Impax*, at 9 ("As alleged, the negative market reaction here merely reflects reported financial losses relating to the entrance of new market competitors."). The *Impax* court specifically envisioned the adequacy of a disclosure that "is linked to both (1) the alleged misstatements and omissions regarding [generic drug] pricing; and (2) a decrease in Impax's stock prices." *Impax*, at 8-9. The *Impax* court cited with approval a case finding loss causation sufficiently alleged where, *inter alia*, the company disclosed a subpoena that "caused its stock price to drop precipitously' and was "perceived to be related to [the defendant's alleged misstatements." *Id.* (citing *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). That is the exact scenario presented here. *See also In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828-29 (D.N.J. 2006) ("Defendants' contention that the announcement of the SEC inquiry did not satisfy Dura's 'revelation of the truth' requirement fails to acknowledge the significance of the market reaction to the . . . disclosure"); *Public Empls' Ret. Sys. of Mississippi v. Amedisys, Inc.*, 769 F.3d 313, 324 (5th Cir. 2014) (reversing dismissal and rejecting "an overly rigid rule that government investigations can never constitute a corrective disclosure in the absence of a discovery of actual fraud").

Thank you for your attention to this matter. Of course, if the Court has any questions, we are available at your convenience.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

/s/ James E. Cecchi

JAMES E. CECCHI

cc:   All counsel (via ECF and email)