UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

<table>
<tr><td>IN RE ALLERGAN<br>GENERIC DRUG PRICING<br>SECURITIES LITIGATION</td><td><u>Civil Action No. 2:16-9449 (KSH) (CLW)</u><br><br><u>OPINION AND ORDER</u></td></tr>
</table>

## I.     Introduction

This matter comes before the Court on the letter motion of Lead Plaintiffs Sjunde AP-Fonden and Union Asset Management Holding AG ("Plaintiffs") seeking, under Local Rule 37.1 and FED. R. CIV. P. 26 and 45(b), to quash a subpoena (the "Subpoena") issued by Defendants to non-party the City of Providence, Rhode Island ("Providence") and/or a protective order (D.E. 152).[1] Providence joined in Plaintiffs' motion (D.E. 157);[2] Defendants submitted opposition (D.E. 160); and Providence submitted a declaration in further support (D.E. 165), to which Defendants responded (D.E. 166).

For the reasons stated below, Plaintiffs' motion is granted in part and denied in part. The Court will grant a protective order as to the portion of the Subpoena seeking a deposition and deny Plaintiffs' motion in all other respects.

## II.     Background

Plaintiffs brought this securities class action in December 2016. D.E. 1. Broadly, the action grows from Defendants' alleged participation in a generic pharmaceutical price-fixing conspiracy which has yielded numerous state and federal investigations and congressional inquiries dating

---

[1] Under Rule 45(d)(3)(A), a court my quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Local Rule 37.1 governs discovery motions generally.

[2] The Court will refer to Plaintiffs' and Providence's applications as "Plaintiffs' motion."

back to January 2014. D.E. 82 at ¶¶ 2, 10-14, 21-25. As news of these developments became public throughout 2015 and 2016, defendant Allergan plc's ("Allergan") stock price fell. Id. at ¶¶ 15-17. Plaintiffs allege that—in addition to Defendants' underlying anti-competitive activities— throughout the class period of October 29, 2013 through November 2, 2016, Defendants made fraudulent omissions and misrepresentations as to Allergan's involvement in the alleged price-fixing scheme and the company's overall financial stability. Id. at p. 6 and ¶¶ 26-32. They claim damages arising from the "precipitous decline in the market value of Allergan securities", and seek recovery under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 and SEC Rules 10b-5 and 14a-9. Id. at ¶¶ 1, 33.

Following consolidation, amended complaints, and an unsuccessful motion to dismiss, in March 2020 Plaintiffs filed a class certification motion, which is pending. See D.E. 36, 47, 82, 87, 124, 125, 143. Plaintiffs seek to certify the following class (with certain exceptions):

> (i) as to claims arising under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), all persons and entities who purchased or otherwise acquired Allergan common and/or preferred stock between October 29, 2013 and November 2, 2016, both dates inclusive (the "Class Period"), and were injured thereby; (ii) as to claims arising under Section 14(a) of the Exchange Act in connection with the Forest Merger, all persons and entities who held Forest common stock as of May 2, 2014, and were entitled to vote on the merger between Allergan and Forest, and were damaged thereby; and (iii) as to claims arising under Section 14(a) of the Exchange Act in connection with the Actavis Merger, all persons and entities who held Allergan, Inc. common stock as of January 22, 2015, and were entitled to vote on the merger between Allergan and Actavis, and were damaged thereby.

D.E. 143-1 at 8.

Separate from this action, in May 2016, Providence sued Allergan for the same alleged antitrust violations underlying this matter. City of Providence, Rhode Island v. Allergan, et al., 01:16-CV-00214 (D.R.I.) at D.E. 1. That action arises from Providence's purchase of two of

Allergan's generic drugs which underwent "astonishing" price increases; according to Providence, due to Allergan's anti-competitive activity. Id. at ¶¶ 1-6. Providence's lawsuit was consolidated with several others and is currently proceeding as a multi-district litigation in the U.S. District Court for the Eastern District of Pennsylvania. See In Re: Generic Pharmaceuticals Pricing Antitrust Litig., 02:16-MD-02724 (E.D. Pa.) (the "Antitrust MDL").

In or around May 2020, Defendants served the Subpoena upon Providence.[3] D.E. 152-1. The Subpoena seeks deposition testimony and documents concerning (i) Providence's purchase of Allergan securities; and (ii) Providence's awareness of, and action concerning, Allergan's alleged anti-competitive activities. Id. Providence responded, objecting to the requests and declining to provide any documents. D.E. 160-1. After attempts at resolving these issues failed, D.E. 152-3, 4, 5, Plaintiffs filed the instant motion.

## III. Defendants' Requests for Absent Class Member Discovery

### a. Absent Class Member Discovery Generally

As Providence is not a named party in this class action, but, as discussed below, appears to fall within the definition for the proposed class, much of the parties' briefing centers on the issue of absent class member discovery. It is settled that "[a]bsent [i.e., non-representative] class members are not parties for discovery purposes under Rules 33 and 34. As a result, a strong showing is typically required before discovery of absent class members is compelled." Guenther v. Sedco, Inc., 1998 U.S. Dist. LEXIS 19901, at *17-18 (S.D.N.Y. Dec. 21, 1998) (citation omitted); see, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985) ("[A]n absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its

---

[3] Plaintiffs' motion also addresses a subpoena issued to another non-party, the NECA-IBEW Welfare Trust Fund; however, that subpoena has been withdrawn, thus mooting that portion of the motion. See D.E. 159.

course, content in knowing that there are safeguards provided for his protection."); <u>In re Lucent</u> <u>Techs. Sec. Litig.</u>, 2002 U.S. Dist. LEXIS 24973, at *6 (D.N.J. July 15, 2002) (absent class members "should be treated as passive class members and thus not subject to discovery") (citing cases). The aversion toward absent class member discovery grows in large part from concerns that defendants may use such devices "as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants." <u>See</u> <u>Brennan v. Midwestern United Life Ins. Co.</u>, 450 F.2d 999, 1005 (7th Cir. 1971), <u>cert.</u> <u>denied</u>, 405 U.S. 921 (1972).

The "strong showing" needed to compel absent class member discovery is based on the test initially set forth in <u>Brennan</u> and later modified by various courts, most notably <u>Clark v.</u> <u>Universal Builders, Inc.</u>, 501 F.2d 324 (7th Cir. 1974). Under <u>Brennan</u>, <u>Clark</u>, and their progeny, relevant considerations include whether: (i) the information requested is relevant to the decision of common questions; (ii) the requests are tendered in good faith and are not unduly burdensome; (iii) the information sought is unavailable from the class representative parties; (iv) the requests seek information on matters already known to defendants; (v) the requests are designed to take undue advantage of the class members or to reduce the size of the class; (vi) the discovery is necessary to deciding issues common to the class; and (vii) responding to the requests would require the assistance of counsel. <u>See</u> <u>Brennan</u>, 450 F.2d at 1005; <u>Clark</u>, 501 F.2d at 340-42 and n.24 (citing <u>Brennan</u>); <u>e.g.</u>, <u>Gunter v. Ridgewood Energy Corp.</u>, 1996 U.S. Dist. LEXIS 22298, at *7-8 (D.N.J. Oct. 15, 1996) (citing cases).[4] Unlike a typical motion to quash, in the case of absent class member discovery, "[t]he party seeking discovery has the burden of demonstrating its merits." <u>Clark</u>, 501 F.2d at 340.

---

[4] It is noted that there is considerable variance in the factors selected by courts in assessing absent class member discovery, with courts invoking different combinations of the factors enumerated above.

### b.  **Plaintiffs' Motion**

Plaintiffs' motion involves several idiosyncrasies that complicate matters beyond a simple application of the above factors. For one, although Plaintiffs argue for application of the standard relevant to absent class member discovery, it is by no means settled between Plaintiffs and Defendants that Providence is, in fact, an absent class member in the first instance. Instead, the briefing indicates that the requested materials will shed light on whether Providence is an absent class member; yielding a somewhat collateral inquiry not directly addressed by the bulk of relevant authority which centers more pointedly on discovery from absent class members. And even this must be further qualified: because Plaintiffs' class certification motion is pending, at best, Providence is an absent member of a putative class. Further, while this motion centers on a subpoena—i.e., a non-party discovery device—much of the case law on absent class member discovery (including that cited by the parties) concerns discovery served pursuant to party discovery rules. Finally, Defendants' requests fall into two categories—some items reference Providence's purchase of Allergan securities and thus implicate Providence's status as a potential absent class member; others do not. The Court must address each of these issues in order to properly frame its substantive analysis.

As noted, the parties appear to agree that the Subpoena is geared, at least in part, toward determining whether Providence is an absent class member—a conclusion that Plaintiffs stop short of confirming. See D.E. 152 at 1-2; D.E. 152-4; D.E. 160 at 3. To be sure, Plaintiffs cannot have it both ways: they cannot decline to confirm that Providence is an absent class member, while also arguing the Subpoena should be quashed under the absent class member discovery standard. This hedge notwithstanding, Providence's Declaration is explicit that "Providence purchased shares of Allergan plc common stock during the [relevant] time period." D.E. 165 at ¶ 10. Similarly,

Providence's response to the Subpoena repeatedly and variously refers to its "decision to purchase Allergan Securities"; "purchases and sales of Allergan Securities"; and "decisions to purchase, hold, sell, or exchange Allergan Securities" during the class period, and Providence objected to the Subpoena on the ground that it "seek[s] discovery of an absent class member." D.E. 160-1. Additionally, Defendants concede that a portion of the Subpoena "appl[ies] to Providence specifically in its capacity as a potential absent class member", D.E. 160 at 4. Thus, notwithstanding the parties framing the Subpoena as a means to help determine whether Providence may be an absent class member, the Court deems Providence as such for purposes of this motion.[5]

Next, the Court must determine whether it may apply a standard applicable to absent class members where no class has been certified, and thus, formally, there are not yet any class members—absent or otherwise. Although slightly counterintuitive, the Court finds this a reasonable conclusion. As stated in In re FedEx Ground Package Sys., 2007 U.S. Dist. LEXIS 16205 (N.D. Ind. Mar. 5, 2007),

> [e]ven though a class has not been certified, the same principles that the 7th Circuit relied upon in creating the more stringent standard under Clark and Brennan still apply. Brennan specifically enforced a stricter standard of discovery with absent class members to avoid the risk that absent class members would not be misled or confused. Furthermore, both Brennan and Clark expressed concern that seeking discovery from absent class members may be a tactic to take undue advantage of the class members or to reduce the number of claimants. Even though a class has not been certified, those same fears from post class certification still apply during pre-certification. A party that opposes a future class certification may seek discovery

---

[5] It is true that, to qualify for the class, Providence would need not only to have purchased Allergan common stock during the class period, but also to have been injured thereby. D.E. 143-1 at 8. For present purposes, the Court is satisfied that, in light of the facts alleged, Providence's purchase of Allergan stock during the class period qualifies it as an absent class member, even though Providence and Plaintiffs have not specifically addressed the injury element. See id. at 7 ("When Allergan's role in this colossal cartel came under government scrutiny, the Company's share price plummeted, causing losses to all shareholders in the Class.").

from potential absent class members to take undue advantage of
them or to try and reduce the size of the class.

Id. at *20-21 (citations omitted); see also Manual for Complex Litigation § 21.14 (4th ed.)
("Discovery of unnamed members of a proposed class requires a demonstration of need.")
(emphasis added); see, e.g., Jenifer v. Del. Solid Waste Auth., 1999 U.S. Dist. LEXIS 2542, at *8-
9 (D. Del. Feb. 25, 1999) ("The class has not been certified. . . . Therefore the first issue is whether
the Court has the power to limit contacts with members of an uncertified class. I conclude the
Court does have the requisite authority to limit contacts with putative class members. . . . The
effect of a defendant attempting to influence potential plaintiffs not to join a potential class action
is just as damaging to the purposes of Rule 23 as a defendant that influences members of an already
certified class to opt out. In both scenarios, improper communications could diminish the size of
the class or potential class, and thus, reduce the potential liability.") (citations omitted).

Next, as to the issue that the propounded discovery comes in the form of subpoenas issued
under Fed. R. Civ. P. 45 (which governs non-party discovery), rather than party discovery under
Rules 30, 33, or 34, or class discovery under Rule 23(d),[6] it can be argued on this ground that the
tenet undergirding the restrictions on absent class member discovery—that absent class members
are not parties, and thus not subject to party discovery—has no place here. Instead, the subpoena
may be viewed as a typical Rule 45 discovery device to which general standards on a motion to
quash should apply. See, e.g., Chickadaunce v. Minott, 2014 U.S. Dist. LEXIS 141722, at *19-20
(S.D. Ind. Oct. 6, 2014) ("To the extent that these [absent class members] are now non-party
witnesses, they are subject to the usual discovery methods available with regard to non-parties.
Hence, even if Defendants decide they must conduct discovery on these witnesses, they may do

---

[6] It is true that Defendants served the Subpoena "pursuant to Rules 30(b)(6), 34, and 45"; however, the
Subpoena itself plainly is a Rule 45 subpoena. See D.E. 152-1.

so without violating [the] general rule that absent class members are not subject to discovery. Defendants, that is, would be serving discovery not on absent class members, but on non-party witnesses.") (internal citation omitted).

However, the Court is of the opinion that the heightened standard applies here despite the device at issue being a subpoena. As convincingly explained in a similar situation encountered in In re Publ'n Paper Antitrust Litig., 2005 U.S. Dist. LEXIS 13681 (D. Conn. July 5, 2005),

> [t]he present situation is slightly atypical because the defendants are not seeking party discovery, but third-party discovery pursuant to subpoena. As a technical matter, therefore, the source of the authority for these discovery requests is Rule 45 not Rule 23(d). I do not believe that this procedural difference has any practical effect. . . . I conclude that these rules impose on parties seeking third-party discovery from absent class members at least the same obligations as would apply were the discovery sought under the party discovery rules. Any other holding would allow Rule 45 to be used to end-run around Rule 23. Consequently, although the defendants here have sought discovery by subpoena, the standard that guides my decision whether to permit such discovery is the same as the standard that applies had this discovery been sought in the form of party discovery requests.

Id. at *5-6 (applying absent class member discovery standard). This conclusion finds further support in an expanded rationale for the strictures on absent class member discovery:

> [o]ne objective of Rule 23 is the avoidance of a multiplicity of actions. The satisfaction of this goal is hindered by encouraging exclusion when absent class members are forced to participate in the discovery process . . . If a class member is intimidated to the point [of exclusion], another goal of Rule 23, the resolution of common claims, will be defeated.

In re Worlds of Wonder Sec. Litig., 1992 U.S. Dist. LEXIS 10503, at *4-5 (N.D. Cal. July 9, 1992) (quoting 3 Newberg on Class Actions, § 16.01, at 267 (2d ed., 1985)).[7] Put simply, the risks sought

---

[7] While true that the consequences for noncompliance with a subpoena are limited to contempt under Rule 45(g), rather than the litany of penalties that may be imposed against a party under Rule 37, it is unlikely for an absent class member to appreciate this distinction (particularly without the aid of counsel, a factor that will prove further relevant below).

to be avoided by way of the high barrier to absent class member discovery are equally present in the case of a subpoena. The subpoena/party discovery distinction thus is immaterial to the Court's analysis.

Finally, there is the issue of the two categories of requests propounded in the Subpoena, some of which specifically concern Providence's (presumed) purchase of Allergan securities, and some which do not. The latter items present the unique question of how to address requests propounded on a party that appears to be an absent class member, but which do not directly concern the class action. As above, the Court finds this distinction notable but ultimately immaterial. Being that the limitations on absent class member discovery grow largely from concerns for improper communications with absent class members and the prospect of such individuals being wrongly compelled to participate in discovery, there appears little reason to except from these considerations portions of communications that do not directly address the class action. See, e.g., Doe v. Ariz. Hosp., 2009 U.S. Dist. LEXIS 42871, at *50 (D. Ariz. Mar. 19, 2009) ("[T]he burden to obtain discovery of any kind from absent class members is very high.") (emphasis added) (citing cases).

Having addressed these quirks in Plaintiffs' motion, the Court next applies the factors relevant to absent class member discovery to determine whether such discovery is warranted.

## IV.     Application of Absent Class Member Discovery Factors

### a.  Relevance/Necessity[8] of Information Requested to the Decision of Common Questions

Defendants contend that the information they seek is relevant to three class-wide issues: statute of limitations (which in turn impacts predominance), reliance, and materiality. The Court addresses each in turn.

### i.  Statute of Limitations/Predominance

In Merck & Co. v. Reynolds, 559 U.S. 633 (2010), the Supreme Court established that the statute of limitations for a securities fraud action "accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, the facts constituting the violation--whichever comes first." Id. at 637 (quotation marks omitted). On this point, Defendants argue that the Subpoena may reveal that, pre-limitations period, Providence possessed sufficient information for a reasonably diligent plaintiff to have discovered the facts constituting Defendants' alleged misconduct, thereby giving rise to a statute of limitations defense. Relatedly, Fed. R. Civ. P. 23(b)(3) allows for a class action if, among other things, "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"—commonly known as the "predominance" requirement. To this end, Defendants argue that, assuming Providence was an Allergan investor during the class period, Providence's awareness of Defendants' alleged misconduct (or Providence's capacity for such awareness) may also create predominance concerns as to the timeliness of this action as among various class members.

---

[8] As alluded to above, some courts ask whether the requested discovery is relevant to class-wide issues; others ask if it is necessary to resolving such issues; still others cite both. The Court finds relevance to be the proper locus for this inquiry.

Defendants' first argument is somewhat self-defeating. Because, upon the theory espoused, this action may be untimely if a reasonable investor was aware of certain facts on a certain date, Providence's unique familiarity with Defendants' alleged misconduct is neither necessary nor sufficient to demonstrate untimeliness on a class-wide basis. Indeed, Defendants write that a statute of limitations defense may be available if "Providence was aware of Allergan's alleged misconduct outside the limitations period in this case, and achieved that awareness based strictly on publicly available information." D.E. 160 at 5 (emphasis added). If the basis for this defense is "publicly available information", then—coupled with an objective reasonable investor standard—Providence-specific information has no class-wide bearing here. See, e.g., Throneburg v. Charter Communs., Inc., 2019 U.S. Dist. LEXIS 176180, at *10 (E.D. Mo. Oct. 10, 2019) ("[D]etermining the 'date of discovery' is an objective inquiry; it does not solely depend upon the plaintiff's subjective knowledge.") (citing, e.g., Merck's diligence standard). To the contrary, the only discernible use for such information would be to eliminate Providence as a possible class member, which, as discussed, is patently impermissible.

However, the Court agrees that Providence's peculiar knowledge may be relevant to showing that individual timeliness questions predominate. To wit, the discovery sought may reveal "that because the question of Defendant[s'] liability . . . turns on the individual question of when certain class members 'discovered' or 'should have discovered' Defendant[s'] alleged misconduct, a class action is not the best method of trying the suit." Molina v. Roskam Baking Co., 2011 U.S. Dist. LEXIS 136460, at *14 (W.D. Mich. Nov. 29, 2011) (citing cases); see, e.g., Cabot E. Broward 2 LLC v. Cabot, 2017 U.S. Dist. LEXIS 181583, at *6-7 (S.D. Fla. Oct. 27, 2017) (permitting absent class member discovery as to, e.g., "suspicions about wrongdoing" by defendants investment sponsors, "[b]ecause the Court agrees that it is conceivable that the statute of

limitations issue as it concerns individual class members may create a situation where individual

questions predominate over common ones"); Jim Moore Ins. Agency, Inc. v. State Farm Mut.

Auto. Ins. Co., 2003 U.S. Dist. LEXIS 25550, at *28-29 (S.D. Fla. May 6, 2003) ("Determining

when each agent-member of the class knew or reasonably should have known of the wrongful act

. . . would overwhelm those liability issues subject to generalized proof.") (citing cases); cf. Barnes

v. Am. Tobacco Co., 161 F.3d 127, 149 (3d Cir. 1998) ("[W]e believe that determining whether

each class member's claim is barred by the statute of limitations raises individual issues that

prevent class certification" because individual plaintiffs' claims will have accrued at different

times).[9] As in these matters, the Court believes the Subpoena may reveal evidence enabling

Defendants to oppose class certification on the ground that individual questions predominate

among individual investors as to the accrual of the statute of limitations.

### ii.    Reliance

Defendants also argue that the requested discovery may impact the question of whether

Plaintiffs are entitled to a fraud-on-the-market presumption of reliance. This theory

> is based on the hypothesis that, in an open and developed securities
> market, the price of a company's stock is determined by the
> available material information regarding the company and its
> business. . . . Misleading statements will therefore defraud
> purchasers of stock even if the purchasers do not directly rely on the
> misstatements. . . . The causal connection between the defendants
> fraud and the plaintiffs' purchase of stock in such a case is no less
> significant  than in a case of direct reliance on misrepresentations.

Basic, Inc. v. Levinson, 485 U.S. 224, 241-42 (1988) (quoting Peil v. Speiser, 806 F.2d 1154,

1160-61 (3d Cir. 1986)). The presumption is rebuttable: "[a]ny showing that severs the link

---

[9] Plaintiffs' citation to Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455 (2013) has no place
here—the cited proposition stands for the notion that within a predominance inquiry, "materiality is judged
according to an objective standard", id. at 459, and thus is irrelevant to questions of predominance as
pertaining to the statute of limitations.

between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or

his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."

Id. at 248. Significantly, the presumption may be rebutted "as to the class, or as to each class

member"; i.e., either "1) by disproving materiality or by proving that, despite materiality, an

insufficient number of traders relied to inflate the price; and 2) by proving that an individual

plaintiff purchased despite knowledge of the falsity of a representation, or that he would have, had

he known of it." Jaroslawicz v. Engelhard Corp., 724 F. Supp. 294, 301 (D.N.J. 1989) (quoting

Blackie v. Barrack, 524 F.2d 891, 906 (9th Cir. 1975)).

Defendants' argument proceeds that they may be able to rebut a fraud-on-the-market theory

by showing individual (i.e., Providence's) purchase of Allergan securities despite knowledge of

alleged fraud. But in order to establish this defense, Defendants will have to impute this decision

to the class as a whole. Being that they seek discovery from only one absent class member (or two,

if NECA-IBEW is included) to support a defense against a class believed to number in the

thousands, D.E. 82 at ¶ 269, this is unfeasible. As aptly explained in Lucent,

> [t]hough one way to rebut the presumption of reliance involves
> proving that an individual plaintiff purchased the stock despite
> knowledge of the falsity of a representation, individualized
> questions of reliance will not in this case illuminate a determination
> of class-wide liability or bear on the inquiry into whether the class
> representative's claims are typical of the entire class. In other words,
> discovery as to the investment behavior of the 41 named, non-lead
> plaintiffs is not [ ] probative of the question of class-wide reliance
> on the market. Conclusions drawn from the experience of this
> handful of named parties cannot be extrapolated to represent the
> experience of a class of hundreds of thousands of individuals of
> which the putative class is comprised.
>
> The situation presented in this case is distinct from that in Easton &
> Co. v. Mutual Benefit Life Ins. Co., 1994 U.S. Dist. LEXIS 12308,
> No. 91-4012, 92-2095, 1994 WL 248172 (D.N.J. May 18, 1994). In
> Easton, the court allowed defendants to take discovery of absent
> class members' investment history and background in order to rebut

the presumption of fraud-on-the-market reliance. In stark contrast to this case, Easton involved a total of 160 class members. The small class size established a strong possibility that discovery of individual class members would be probative of the overall class experience. This factor undoubtedly influenced the Easton court's finding that such discovery would be relevant to the issue of class-wide reliance.

In the Lucent matter, there is no basis for concluding that the 41 non-representative named plaintiffs could fulfill the same purpose as a class of thousands. The discovery sought by Lucent instead may be appropriate at a later stage in the case, in which individualized rebuttal proceedings may be pursued to determine whether a claimant may recover, once the matter of liability has been adjudicated.

2002 U.S. Dist. LEXIS 8799, at *4-6 (citations and quotation marks omitted). Because of the large size of the putative class, this case aligns with <u>Lucent</u> and departs from <u>Easton</u>. The Court therefore rejects Defendants' argument that the discovery sought is relevant to the issue of reliance.[10]

### iii.   <u>Materiality</u>

The Court likewise disagrees with Defendants that the discovery sought is relevant to the question of materiality. As Plaintiffs note, the "material misrepresentation" requirement within a

---

[10] Defendants' point that such a ruling may constitute them being punished for seeking "too little discovery"—<u>i.e.</u>, from only one or two absent class members—is well-taken. As will be discussed, however, the narrow focus of Defendants' Subpoena also is a significant factor in this discovery being deemed proper. Therefore, Defendants' targeted discovery ultimately does not impair Defendants' position; it giveth and—on this one discrete point—taketh away.

The Court also notes that <u>Lucent</u>'s analysis could be raised in opposition to the statute of limitations predominance issue, which has been resolved in Defendants' favor. There is, however, a significant difference there: "[i]n weighing common issues against individual issues, '[t]he paramount concern for the court is not merely the number of individual inquiries that may be required, but rather whether the nature of the individual inquiries involved is so complex as to outweigh the nature of the common issues sought to be resolved by class treatment.'" <u>Naparala v. Pella Corp.</u>, 2016 U.S. Dist. LEXIS 72442, at *32-33 (D.S.C. June 3, 2016) (quoting <u>Brooks v. GAF Materials Corp.</u>, 2012 U.S. Dist. LEXIS 150717, at *25 (D.S.C. Oct. 19, 2012)). In other words, "predominance is a qualitative rather than a quantitative inquiry." <u>Brooks</u>, 2012 U.S. Dist. LEXIS 150717, at *25 (citing <u>In re American Honda Motor Co., Inc. Dealers Relations Litig.</u>, 979 F. Supp. 365, 366-67 (D. Md. 1997)). Therefore, evidence of a single class member's subjective experiences may be relevant in demonstrating that individual timeliness issues predominate.

securities fraud case "is judged according to an objective standard"; as a result, "the materiality of [a defendant's] alleged misrepresentations and omissions is a question common to all members of the class . . . . The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 459 (2013). This also means that a "plaintiff class's inability to prove materiality would not result in individual questions predominating. . . . As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." Id. at 459-60.

Defendants try to argue that even upon a subjective materiality standard, individual discovery may be relevant, citing United States v. Litvak, 889 F.3d 56 (2d Cir. 2018), where the Second Circuit approved the use of individual investors' testimony to prove materiality in a securities fraud case. Id. at 65. Defendants' argument fails for several reasons. First, Litvak involved post-trial motions, not pretrial discovery as here. More significantly, Litvak was a criminal matter, not a class action. As a result, Amgen's class-specific framework had no place there. Indeed, if the cases were on equal ground, it would be hard to square Litvak with Amgen's unambiguous statement that "[i]n no event will the individual circumstances of particular class members bear on the [materiality] inquiry." 568 U.S. at 460 (emphasis added).

In summary, the Court finds that the discovery sought by the Subpoena is not relevant to issues of timeliness, reliance, or materiality. However, the discovery is relevant to the question of whether individual issues predominance as to the timeliness of this action.

### b.  Whether the Requests are Tendered in Good Faith and are Not Unduly Burdensome

As to the issue of good faith and burdensomeness, Plaintiffs argue that Defendants tendered the Subpoena (i) in hopes of determining whether Providence is an absent class member; and that

if so, that Defendants will use discovery gleaned from Providence to strike a portion of the class; and (ii) possibly in retaliation for Providence's participation in the Antitrust MDL. D.E. 152 at 1-2, 7-8.[11]

For several reasons, the Court disagrees with Plaintiffs and finds this factor to favor Defendants. First, the Subpoena is narrowly tailored, seeking discrete and straightforward categories of information which relate to reasonable grounds for Defendants to challenge class certification. See, e.g., In re MacDonell, 2017 U.S. Dist. LEXIS 206836, at *9 (E.D. Cal. Dec. 15, 2017) (subpoena that "target[ed] a discrete set of records and information" relating to underlying dispute not unduly burdensome) (quotation marks omitted). Second, the cases cited by Plaintiffs on this issue prohibit discovery gambits such as "requir[ing] class members to complete and return the questionnaire on the condition that failure to do so would result in the member's dismissal from the Class", thereby having "the effect of requiring the class member to opt into the Class." McCarthy v. Paine Webber Grp., 164 F.R.D. 309, 313 (D. Conn. 1995); see also Clark, 501 F.2d at 340 (rejecting exclusion of absent class members for failure to comply with discovery); McPhail v. First Command Fin. Planning, Inc., 251 F.R.D. 514, 518 (S.D. Cal. 2008) (prohibiting absent class member discovery where "the practical effect[s] of the discovery would be to reduce the size of the class" and "requiring an opt-in procedure"). And absent meaningful factual support, the Court cannot credit Plaintiffs' ipse dixit "suggest[ion]" that the Subpoena was issued for retaliatory reasons. D.E. 152 at 6.[12]

---

[11] Providence passingly adds that "the Subpoena is burdensome and harassing since the information requested is publicly available", D.E. 157 at 2, but provides no factual support for this assertion. The same is true of its statement that the Subpoena is more appropriately addressed to other parties which possess the requested information. Id.

[12] The Court similarly notes its disagreement with Plaintiffs' statements that Providence's antitrust lawsuit resulted in Providence's "exposure" to the instant non-party discovery. D.E. 152 at 5-6. To the contrary, Rule 45 subpoenas are always available to parties in a lawsuit (if issued for good cause). There is nothing

Additionally, Plaintiffs—while appearing to concede that it is reasonable for Providence, having sued Allergan for alleged price fixing, to supply information regarding its beliefs as to such alleged activity—argue that this information should be obtained as party discovery in the Antitrust MDL. D.E. 152 at 5-6. This argument fails on two counts. First, as Defendants note, Allergan no longer is a party in the Antitrust MDL, having sold its Actavis generics business in August 2016. D.E. 160 at 10 n.10; see also Antitrust MDL, D.E. 164 (replacing Allergan as named party in MDL). And in any event, Plaintiffs' argument is a non-sequitur: even if Defendants could obtain the information in the Antitrust MDL, this does not amount to the information being "available from the class representative parties", Gunter, supra (emphasis added), which is the focus of this inquiry. The Court therefore concludes that the Subpoena was issued in good faith and is not unduly burdensome.[13]

### c. Whether the Information Sought is Unavailable from the Class Representative Parties

There is no indication that the information Defendants seek from Providence is available from the class representative parties, nor does it stand to reason that the class representatives would

---

about Providence's action against Allergan that "expos[ed]" Providence to a discovery mechanism that otherwise would not be available against it.

[13] As noted, Providence has submitted a declaration from City Solicitor Jeffrey Dana. D.E. 165. Mr. Dana explains that Providence has created a pension fund for city employees which is overseen by Providence's Board of Investment Commissioners. The Board, in turn, has conferred investment authority to outside consultants. Id. at ¶¶ 2-4, 9. Separate from this, Providence administers a health plan which buys and pays for prescription drugs. Id. at ¶¶ 5, 8. Because of this arrangement, Mr. Dana writes that Providence was not "involved in the creation or implementation of the investment strategy concerning or relating to the purchase of Allergan shares. . . . Thus, Providence is not in possession, custody, or control of most of the requested documents." Id. at ¶ 10. The Court finds this an insufficient ground to quash the Subpoena. First, if it is indeed the case that Providence does not have the materials Defendants seek, then they can indicate as much in their response. Second, the Subpoena expressly requests information from, inter alia, "representatives, agents, . . . and all other persons acting, purporting to act, or authorized to act on [Providence's] behalf", D.E. 152-1 at 8, which surely encompasses the outside consultants referenced in Mr. Dana's declaration.

be privy to information regarding Providence's engagement with Allergan securities and/or awareness of Allergan's alleged price fixing. This factor therefore favors Defendants.

### d. Whether the Requests Seek Information on Matters Already Known to Defendants

The parties do not address the issue of whether the Subpoena seeks information on matters already known to Defendants. As noted, a party seeking absent class member discovery bears the burden of demonstrating its merits. Clark, 501 F.2d at 340. Being that Defendants have not done so here, this factor favors Plaintiffs.

### e. Whether the Requests are Designed to Take Undue Advantage of the Class Members or to Reduce the Size of the Class

Plaintiffs argue that the Subpoena is geared toward reducing the size of the class, relying primarily on a statement from Defendants that the Subpoena is "relevant to determining whether a portion of the class would not be entitled to the fraud-on- the-market presumption of reliance because they had already concluded Allergan was engaged in supposed price fixing prior to the end of the class period." D.E. 152 at 7-8; D.E. 152-3 at 3-4. Plaintiffs' argument misses the mark. The very next sentence in Defendants' correspondence explains that "[u]nder such circumstances, class certification would be inappropriate because individual questions regarding which investors had concluded that Allergan had engaged in price fixing (and nonetheless continued to trade Allergan securities) would predominate over any common questions." D.E. 152-3 at 4. Thus, the thrust of Defendants' request for this information is not, as Plaintiffs frame it, to reduce the size of the class by picking off possible class members, but instead to challenge class certification in general, i.e., by undercutting the fraud-on-the-market presumption.

McPhail provides a helpful contrast. As here, the defendants there sought absent class member discovery expressly geared toward "rebutting the presumption of reliance." 251 F.R.D. at

516.[14] Critically, the discovery was directed toward "Each Absent Class Member Represented by

Lead Plaintiffs and Lead Counsel." Id. at 515. In disallowing the discovery, the court explained:

> With respect to [this] factor, the Court finds that notwithstanding
> Defendants' stated purpose of utilizing the discovery responses to
> rebut the presumption of reliance and to defend other elements of
> Plaintiffs' claim, the practical effect of the discovery would be to
> reduce the size of the class. Obtaining the answers to the proposed
> discovery from all 178,527 absent class members is impracticable
> and unrealistic. The level of detail required to respond to the
> discovery, which requests, for example, that absent class members
> "provide all information [you] relied upon in making [your] decision
> to invest in a SIP" and "provide detailed information describing your
> experience and knowledge as an investor before you invested in a
> SIP," including listing "every investment you made before investing
> in your SIP", would deter many absent class members from
> responding, particularly if they are unaware of the ramification of
> not providing responses. Moreover, the discovery requests would
> have the effect of requiring an opt-in procedure, particularly given
> Defendants' reservation of their right to "seek appropriate relief"
> (i.e., a dismissal of claims) as to any class members who do not
> timely respond to the discovery.

251 F.R.D. at 518 (citations omitted).

The present case differs for three reasons. First, Defendants do not seek information as

broad as, for example, "every investment [Providence] made before investing in [Allergen]", and

thus the concerns for deterring responses due to the detail required is absent here. Second, nowhere

does the Subpoena warn that non-compliance may result in dismissal of claims. Nor is it the case

that the Subpoena will have the effect of reducing the size of the class or creating an opt-in

procedure. Perhaps most significantly, the Subpoena is directed toward one absent class member—

Providence—as opposed to "all 178,527 absent class members" as in McPhail. Id.; see, e.g.,

Arredondo v. Delano Farms Co., 2014 U.S. Dist. LEXIS 145562, at *23 (E.D. Cal. Oct. 10, 2014)

---

[14] It is noted that "[a]lthough the presumption of reliance in [McPhail] did] not rest upon the fraud-on-the-market doctrine, the analyses regarding rebutting the presumption of reliance [under such a theory were] still instructive to the Court." McPhail, 251 F.R.D. at 517.

(permitting absent class member discovery in part because "[u]nlike other cases where Defendants sought discovery from significantly larger numbers of (and at times, all) absent class members, here Defendants have limited their request to roughly 200 - less than one percent of the 25,000 total class members"). This, more than anything, demonstrates that the purpose of the Subpoena is not to squeeze out possible class members, but to allow Defendants to establish defenses to class certification, which they no doubt are entitled to do. The Court thus concludes that the Subpoena is not geared toward taking undue advantage of class members or reducing the size of the class.

**f.   Whether Responding to the Requests
      Would Require the Assistance of Counsel**

On the question of assistance of counsel, the Court finds this case similar to McPhail. Compare D.E. 152-1 at 18-19 with McPhail, et al v. First Command, et al., Case No. 3:05-cv-00179-IEG-JMA (S.D. Cal.), D.E. 212-3. The McPhail court was "utterly [un]convince[d] . . . that responding to the discovery requests would not require the assistance of counsel", citing the need to "to confer with Class Counsel to understand the purpose of the request, the penalty for not filing a response, the need to discuss all relevant information, the need to refresh their recollection with documentation, the need to understand the context of the request in light of the allegations of the complaint and the reason the Defendants are making the request." McPhail, 251 F.R.D. at 518. The Court finds these concerns to be equally present here, and—as will be discussed next—doubly so with regard to Defendants' demand for a deposition. This factor therefore favors Plaintiffs.

In summary, the Court finds the balance of the relevant factors to weigh in favor of Defendants. It therefore concludes that Defendants have carried their burden of demonstrating entitlement to the discovery sought in the Subpoena. As a result—subject to the exception

discussed below—the Court will deny Plaintiffs' and Providence's requests to quash the Subpoena or issue a protective order.[15]

## V.   Compliance with the Subpoena

As noted, the Subpoena requests both documents and Providence's appearance for a deposition. Courts regularly hold that "the burden confronting the party seeking deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories." Clark, 501 F.2d at 341; see, e.g., Redmond v. Moody's Inv'r Serv., 1995 U.S. Dist. LEXIS 6277, at *3 (S.D.N.Y. May 10, 1995) ("[T]he burden on the defendant to justify discovery of absent class members by means of deposition is particularly heavy.") (citing Baldwin & Flynn v. National Safety Associates, 149 F.R.D. 598, 600 (N.D. Cal. 1993)). Thus, while the Court finds that Defendants have satisfied their burden to the extent the Subpoena seeks documents, it is not convinced that a deposition is warranted. Instead, the information sought likely can be obtained through Providence's responses to the Subpoena's document requests. See, e.g., A.B. v. Pac. Fertility Ctr., 2019 U.S. Dist. LEXIS 208158, at *5 (N.D. Cal. Dec. 3, 2019) (denying request for absent class member depositions because defendant "does not explain how Plaintiffs' offer to have these former named plaintiffs answer five interrogatories will not provide [defendant] with sufficient information to oppose class certification. Sitting for a deposition is a burden,

---

[15] The Court finds inapposite the cases cited by Plaintiffs to argue that Defendants should not be entitled to the information sought until after a determination on liability. Briefly, in In re Petrobras Sec. Litig., 2016 U.S. Dist. LEXIS 21028 (S.D.N.Y. Feb. 21, 2016), "the practical effect of defendants' interrogatories would be the alteration of the Classes from opt-out classes to opt-in classes", a consideration absent here. Id. at *6. McPhail references a significant distinction between it and Waters v. Int'l Precious Metals Corp., 172 F.R.D. 479 (S.D. Fla. 1996): Waters—like the present case and unlike McPhail (as well as Gunter v. Ridgewood Energy Corp., 1996 U.S. Dist. LEXIS 22298 (D.N.J. Oct. 16, 1996), also cited by Plaintiffs)— involved a fraud-on-the-market presumption of reliance, which may be established on an individual basis. McPhail, 251 F.R.D.at 517, 520; Gunter, 1996 U.S. Dist. LEXIS 22298, at *8 n.3; Waters, 172 F.R.D. at 487-88; 502-03. Plaintiffs also cite On the House Syndication, Inc. v. Fed. Express Corp., 203 F.R.D. 452 (S.D. Cal. 2001), which was decided based upon the unique facts there involving the defendant's right to set-offs from certain class members. Id. at 458.

especially for an absent class member . . . ."). Therefore, the Court will grant a protective order as to the portion of the Subpoena seeking a deposition. If, upon receipt of Providence's responses, Defendants believe that a deposition still is required, they may, after making diligent efforts to resolve any outstanding issues, apply to the Court for an order directing Providence to submit to a deposition.

**VI.**     <u>**Conclusion**</u>

For the reasons stated, it is hereby

ORDERED that Plaintiffs' and the City of Providence's motions [D.E. 152, 157] are GRANTED to the extent that the motions seek a protective order precluding enforcement of the portion of Defendants' Subpoena seeking a deposition from Providence; and it is further

ORDERED that Plaintiffs' and Providence's motions are DENIED in all other respects.


Dated: January 25, 2021

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.
